McCALEB, Justice.
 

 This suit for damages arises out of an automobile accident occurring at approximately 1:00 p. m. on November 28, 1955, about eight miles north of Baton Rouge on Plank Road, a two-lane two-way hard surfaced highway, when an automobile owned and driven by plaintiff struck a pickup truck owned and operated by defendant. At the time of the accident, plaintiff was attempting to overtake and pass the truck which defendant had edged over the center line of the roadway preparatory to making a left turn onto the premises of his servant.
 

 Plaintiff instituted the action to recover damages to his car, amounting to $608.30, charging that the accident was attributable
 
 *393
 
 solely to the negligence of defendant. This was denied by defendant in his answer and he, having sustained personal injuries in the accident, reconvened for $235,965.37. He alleged that plaintiff was grossly negligent and, alternatively, pleaded contributory negligence and the doctrine of last clear chance.
 

 The case was tried on these issues before a jury and resulted in a verdict for defendant in the sum of $8,507.37. Judgment was rendered in accordance with this verdict and plaintiff appealed therefrom to the Court of Appeal, First Circuit, where the judgment was affirmed. See Johnson v. Wilson, 97 So.2d 674. At plaintiff’s instance we granted a writ of certiorari
 
 [1]
 
 and the case has been argued and submitted for our decision.
 

 There is no important disagreement between the parties as to the facts of the case as found by the Court of Appeal. Nor does counsel for plaintiff take serious issue with that court’s ruling that plaintiff was guilty of negligence in striking the Wilson car in that he was travelling at a speed in excess of 60 miles per hour (in violation of Section 223 of the Motor Vehicle and Traffic Regulation Statute, R.S. 32:223) and was somewhat inattentive in his driving when he attempted to overtake and pass defendant’s truck.
 

 On the other hand, counsel proclaimed that the Court of Appeal erroneously exonerated defendant from blame in view
 
 [1]
 
 of the uncontroverted facts which disclose that defendant violated positive provisions of law, R.S. 32:235(B), in crossing over the center line of the highway in order to negotiate a left turn and that he was also imprudent in pulling into the left lane without looking into his rear view mirror immediately before undertaking such a movement.
 

 We think that this complaint is well founded in law. The facts of the case are substantially as follows:
 

 At the place of the accident the highway runs relatively straight and flat in both directions. Defendant testified that he was about 500 feet from where he was to turn left into his servant’s driveway when he first noticed, in his rear view mirror, the Johnson car which was at that time between one-fourth and one-half a mile behind him; that he was travelling at a speed of 35 miles per hour, so he slowed down,
 
 *395
 
 foiled down his window glass and stuck his arm straight out as a 'signal of his intention to make a left turn; that, when he was 80 to 100 feet from the driveway, he looked in his mirror again and saw the Johnson car 300 to 400 feet behind him; that he never looked back for the overtaking car again and that, when he was 70 feet from the driveway, having meanwhile slowed his speed to 20 miles per hour, he edged over the center line of the highway and began a gradual left turn, believing that the Johnson car would pass him on his right.
 

 When defendant’s truck reached a point 35 feet from his servant’s driveway, the left front wheel was approximately four feet left of the highway center line and the left rear wheel about two feet left of the center line. It was at this point that the right front fender of the Johnson car collided with the left rear fender and wheel of defendant’s truck, displacing the wheel and causing the truck to overturn.
 

 We think the foregoing facts plainly exhibit that defendant was guilty of negligence which substantially contributed to the accident and but for which the accident would not have happened. However, we intermit our discourse on this subject to dispose of the contention made here, and in the lower courts, by defendant’s counsel that plaintiff may not urge contributory negligence because he did not specially plead that defense by way of answer to the reconventional demand. Counsel say that Article 377 of the Code of Practice requires that a plaintiff file written answer to a reconventional demand and that the Court of Appeal, Second Circuit, in Young v. Geter, 174 So. 661 has indicated that whenever a plaintiff relies upon a special defense to defeat a reconventional demand, such defense must be formally pleaded.
 

 Counsel’s position is not tenable. Article 329 of the Code of Practice declares that when the defendant alleges new facts in his answer “ * * * these shall be considered as denied by the plaintiff; therefore neither replication nor rejoinder shall be admitted.” Conformably with this article, the Court has held on numerous occasions that, since neither replication nor rejoinder are admitted under our pleadings, tire allegations of an answer are open to any objections of law and fact without special plea and that, if the defendant is taken by surprise, the proper remedy is a continuation or a new trial. Patton’s Heirs v. Moseley, 186 La. 1088, 173 So. 772; Roy O. Martin Lumber Co. v. Hodge-Hunt Lumber Co., 190 La. 84, 181 So. 865; Lee v. Perkins, 195 La. 939, 197 So. 607; Galiano v. Galiano, 213 La. 332, 34 So.2d 881; Cheramie v. Stiles, 215 La. 682, 41 So.2d 502 and Loew’s Inc. v. Don George, 227 La. 127, 70 So.2d 534.
 

 Article 377 of the Code of Practice, relied on by defense counsel, provides that
 
 *397
 
 reconvention may be pleaded by a defendant either as an exception in his answer to the principal demand or he may institute a distinct and separate demand before the court in which the main demand is pending “ * * * and the original plaintiff shall be bound to answer without pleading to the jurisdiction of the court, even, if he has his domicil elsewhere, * * * ”. The quoted provision that the original plaintiff shall be bound to answer without pleading to the jurisdiction does not mean, as counsel contend, that a written answer shall be filed to the reconventional demand. Hobson v. Woolfolk, 23 La.Ann. 384; Lamorere v. Avery, 32 La.Ann. 1008 and Burge v. Batson, 149 La. 542, 89 So. 687. It simply signifies that the original plaintiff may not question the jurisdiction of the court “ * * * even if he has his domicil elsewhere * * * ” since he has submitted himself to the court’s jurisdiction by filing the original demand. The article must be read in connection with Article 329 of the Code of Practice which prohibits replications and rejoinders and, when thus considered, it cannot be construed (as contended by counsel) to require a formal answer or special plea to a .reconventional demand. The statement in Young v. Geter, supra, indicating a contrary view, was wholly unnecessary to the decision of the case and, hence, is to be regarded as pure dictum.
 

 Returning, noty, to the issue of defendant’s contributory negligence, we are convinced that he was imprudent in two particulars which had causal connection with the accident. First, it is shown by defendant’s own testimony that, after he had seen the Johnson car 300 to 400 feet behind him and was undoubtedly aware that this car was engaged in an overtaking operation, he edged his truck over the center line and into the left (or passing) lane without looking back again in order to ascertain whether it was hazardous for him to do so.
 
 [2]
 

 It is seen from the statement of defendant, which we have quoted below in Footnote No. 2, that he felt that, when he had given a hand signal indicating his intention to make a left turn, he was
 
 *399
 
 entitled to engage in that maneuver irrespective of the speed of plaintiff's car or the distance of the car from the truck at that time. But, of course, defendant did not have the legal right to commence a left turn by driving over the center line when confronted with an unfavorable traffic condition and, had he checked to his rear, just before turning, he would have realized that the Johnson car was rapidly closing the 300 to 400 foot gap between the car and the truck, which he had previously observed, and prudence would have demanded that he wait until the speeding car either slowed or passed before beginning his angling turn. See Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209 and Leonard v. Holmes & Barnes, 232 La. 229, 94 So.2d 241, 242, wherein we approved a ruling of the Court of Appeal that the driver of defendant’s truck was negligent “in that he failed to look to his rear just before attempting the lefthand turn, under the well settled law of this state that a person who attempts to make a lefthand turn on a public highway must be sure before doing so that the turn can be made in safety”.
 

 In addition, the turn attempted by defendant herein was violative of R.S. 32:-235(B), which prescribes the rules for making a left turn as follows:
 

 “B. Except as otherwise provided in this Section, the driver of a vehicle * * * when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left.”
 

 It is true that no intersection, by strict definition, was involved in this case but the above stated rule applies equally, if not with stronger reason (see R.S. 32:237 (E)), to the making of a left turn into a private road from a public highway. In requiring that a driver making a left turn remain in his own traffic lane before engaging in this maneuver, the Legislature gave recognition to the danger attendant to left turns in modern day highway conditions under which the driver intending to make a left turn is compelled to judge the speed of oncoming and overtaking traffic. To minimize accidents resulting from inability of the left turning driver to gauge speed accurately, the law wisely imposes
 
 on him the duty of
 
 remaining
 
 in
 
 his own traffic lane until he is reasonably sure that the turn can be made in safety.
 

 As we read the opinion of the Court of Appeal, it apparently concedes that defendant violated the mandate of R.S. 32:235(B) but concludes that his negligence in this respect was not a proximate cause of the accident. This- resolution, in
 
 *401
 
 our opinion, necessarily overlooks the realities of the situations of the participants in the accident for it can hardly be gainsaid that, had defendant continued in his proper lane of travel until he reached the point where the left turn should have been made, plaintiff’s car, travelling at over 60 miles per hour, would have already overtaken and passed his truck.
 

 Although the Court of Appeal did not specifically rule that the doctrine of last clear chance was applicable, it referred to that doctrine in its opinion and seemingly indicated that it might be applied if it was necessary so to do.
 

 In our view the doctrine has no relevance to the case, as the testimony indicates that both cars began to pull into the left lane at approximately the same time, when they were too close together for either driver to act effectively to avoid the accident. Both parties were guilty of negligence which continued to the moment of the accident and, at the time each party discovered, or should have discovered, the other party’s peril, it was too late to act.
 

 The judgment of the district court, which was affirmed by the Court of Appeal, awarding defendant damages on his reconventional demand, and taxing as costs the fees of certain experts testifying on behalf of defendant, is reversed and set aside and it is ordered that the reconventional demand be dismissed. In other respects, the judgment of the district court is affirmed. All costs in the case are to be paid by the litigant incurring such costs.
 

 [1]
 

 . We note that defendant filed an answer to plaintiff’s application for a writ, praying that the judgment of the Court of Appeal be amended by increasing the award to $45,804.12. This answer cannot be considered, it being well settled that, in cases brought here on certiorari under Section 11 of Article 7 of the Constitution, a party who has not applied for and obtained a writ of review, cannot have the judgment changed to the detriment of the party who was successful in obtaining the writ.
 
 D.
 
 H. Holmes Co. v. Morris, 188 La. 431, 177 So. 417, 114 A.L.R. 905 and Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209.
 

 [2]
 

 . Defendant testified:
 

 “Q. After you saw Mr. Johnson’s ear 300 to 400 feet behind you, did you ever again look back at. him, and, of course, I mean before the accident, Mr. Wilson? Did you ever again look back at him, either by using your rear view mirror or looking backwards from the truck or anything? Did you ever look at him again?
 

 “A. No, sir. I didn’t have any right to or occasion to 'because I had give him a hand signal and plenty enough time for him to realize I was going to make a lefthand turn and before I started leaving the highway to make the loft turn to go over into the lefthand of the road he had plenty of time to know I was going over there and if he had been driving the lawful rate of speed he would have never had to have pulled over to have gone around me. The road would have been clear on the right hand side for him.”