132 So.2d 504 (1961)
Helen DESHOTELS, Plaintiff & Appellee,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant & Appellant.
No. 315.
Court of Appeal of Louisiana, Third Circuit.
July 12, 1961.
Rehearing Denied September 7, 1961.
Certiorari Denied October 27, 1961.
Lewis & Lewis, by John M. Shaw, Opelousas, for defendant-appellant.
McGee & Soileau, by Daniel J. McGee, Mamou, for plaintiff-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
CULPEPPER, Judge.
This is a tort action by Helen Deshotels, wife of John Allen Soileau, for personal injuries sustained while she was riding as a guest passenger in a 1955 Chevrolet truck being driven by her said husband and insured at the time by the defendant, United States Fire Insurance Company, under a liability policy affording $5,000 coverage for injuries to each person. From a judgment of the lower court finding Mr. Soileau *505 negligent and awarding plaintiff damages in the total amount of $4,500 the defendant has prosecuted this appeal. Plaintiff has answered the appeal, seeking an increase in the judgment to the full $5,000 coverage.
The evidence shows that the accident occurred on September 25, 1959, at approximately 11:15 P.M. on Louisiana Highway No. 10 about two miles west of Ville Platte at a point where said highway runs straight approximately east and west, contains two lanes and has pavement 18 feet in width with shoulders of approximately 13 feet on each side. The weather was dry and clear. The speed limit was 60 miles per hour. Mr. Soileau testified that he was driving east and when he reached a point about one-half mile from the gravel road at which he intended to turn to the left off the highway to return to their home, he noticed that another car was following him. Mr. Soileau testified further that as he came within about 500 yards of said gravel road to the left, he put his hand out to indicate a left turn and began to slow down, from a speed of 40 or 45 miles per hour, by releasing the accelerator. He stated also, that when he was 100 or 200 feet from the gravel road, he looked into his rear-view mirror for the last time and saw the car following him and decided that he had plenty of time to turn in safety, so as he reached the T-intersection and had slowed to a speed of 10 or 20 miles per hour, he pulled in his hand and placed it on the steering wheel and started to turn left onto the gravel road, when he was struck from the rear by a 1958 Ford owned and operated by Mrs. Tessie McGee, of Houston, Texas. Mr. Soileau testified that he did not know whether his left front wheels had crossed the center line of the highway at the time of the impact, but he did testify quite positively that he had started turning.
Mrs. McGee's testimony was not taken by either plaintiff or defendant. The only other witness to the accident was the plaintiff, who testified that her husband had slowed down to make a left turn, but she didn't know whether or not he had actually started his turn at the time of the impact.
Mr. Floyd Fontenot, the Louisiana State Trooper who investigated the accident, testified that when he arrived at the scene, at about 11:45 P.M., he found the Soileau truck on the left shoulder of the highway just beyond the gravel road and the McGee vehicle on the right shoulder of the highway about opposite the said gravel road. Mr. Fontenot testified that the right front portion of the McGee vehicle had struck the left rear portion of the Soileau vehicle. The trooper located the point of impact, as indicated by dirt and debris, in the south lane of traffic near the center line of the highway and 20 to 30 feet from the intersection of the gravel road.
It is the contention of the plaintiff, that Mr. Soileau was guilty of negligence proximately causing the accident, because he attempted to turn left off the highway without making certain that the turn could be made in safety and in not yielding the right of way to the McGee vehicle which was overtaking him. One of the many cases cited by plaintiff is Washington Fire & Marine Insurance Company v. Firemen's Insurance Company, 1957, 232 La. 379, 94 So.2d 295, 296, in which the court stated the applicable law as follows:
"The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver `shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is *506 clear.' (Emphasis ours.) Among pertinent cases are Lane v. Bourgeois, La.App., 28 So.2d 91; Home Insurance Co. v. Warren, La.App., 29 So.2d 551; Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264; Malone v. Fletcher, La. App., 44 So.2d 352; Zurich Fire Ins. Co. of New York v. Thomas, La.App., 49 So.2d 460; and Codifer v. Occhipinti, La.App., 57 So.2d 697. In the last cited case the Court of Appeal for the Parish of Orleans aptly stated that `When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence.' 57 So.2d at page 699."
In the instant case we have no difficulty in concluding that Mr. Soileau was guilty of negligence proximately causing the accident. He stated that when he was 100 or 200 feet from the intersection he looked in his rear view mirror for the last time and saw the McGee vehicle following behind and that he continued to slow down, pulled his left hand in and started turning, without again looking to ascertain the position of the vehicle to his rear. Clearly he did not yield the right of way as he is required by law to do. A similar situation was presented in the recent case of Johnson v. Wilson, 1960, 239 La. 390, 118 So.2d 450, 453, in which the Court held as follows:
"* * * But, of course, defendant did not have the legal right to commence a left turn by driving over the center line when confronted with an unfavorable traffic condition and, had he checked to his rear, just before turning, he would have realized that the Johnson car was rapidly closing the 300 to 400 foot gap between the car and the truck, which he had previously observed, and prudence would have demanded that he wait until the speeding car either slowed or passed before beginning his angling turn. See Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209 and Leonard v. Holmes & Barnes, 232 La. 229, 94 So. 2d 241, 242, wherein we approved a ruling of the Court of Appeal that the driver of defendant's truck was negligent `in that he failed to look to his rear just before attempting the lefthand turn, under the well settled law of this state that a person who attempts to make a lefthand turn on a public highway must be sure before doing so that the turn can be made in safety'."
Defendant's principal contention is that Mr. Soileau was merely slowing down and preparing to make a left turn, but that at the time of the impact, he had not actually started to turn, and that therefore this case falls within the jurisprudence which affords the leading car a superior right over the following vehicle. Greer v. Ware, La.App., 187 So. 842; Crow v. Alesi, La.App., 55 So.2d 15. However, as stated above, it is our opinion that the evidence clearly shows Mr. Soileau had started his left turn and was in the act of turning at the time of the impact. Mr. Soileau's positive testimony in this regard is uncontradicted and is corroborated by the physical fact that, after the impact, his vehicle continued in the direction in which it was turning and came to rest on the left shoulder of the highway, whereas the McGee vehicle came to rest on the right shoulder of the highway.
As regards the quantum of damages, the trial court awarded $3,500 for physical pain, suffering and disability and the sum of $1,000 for mental suffering and anxiety or a total of $4,500. The plaintiff, who was 6½ months pregnant at the time of the accident, testified that when their truck was hit violently from the rear, her head was thrown back, striking and breaking the rear glass, and then she was thrown forward, striking her shoulder, arms, legs and knees on the dash. Immediately after the accident, plaintiff was taken to the *507 Attaway Hospital in Ville Platte where she was examined and treated by Dr. Gordon E. Soileau, who diagnosed her injuries as shock, cerebral concussion, lumbar sprain, a sprain of her shoulder, multiple contusions over her body and limbs and contusions of the abdominal wall which gave the doctor considerable concern for the unborn child. Dr. Soileau testified that plaintiff remained in the hospital for a period of 8 days, and during this time suffered considerable physical pain and great mental anxiety due to her pregnancy. After her release from the hospital, plaintiff continued under the treatment of Dr. Soileau and fortunately had a normal, full-term delivery, of a perfectly normal baby, on December 14, 1959. On January 5, 1960, she was finally released by Dr. Soileau as being fully recovered from the injuries received in the accident and on the date of his deposition, which was January 18, 1961, it was the testimony of Dr. Soileau that he had not again seen the plaintiff as a patient since January 5, 1960, for any condition related to the accident.
Dr. Frank Savoy, Jr., who actually delivered the plaintiff's child, testified that she was readmitted on December 18, 1959, the day following her discharge, for elevated blood pressure and headaches and that he made a diagnosis of "post partum eclampsia", but he testified positively that this condition had no relation to the injuries received in the accident. Dr. Savoy testified that he last saw plaintiff in connection with her pregnancy on February 19, 1960. Dr. Gerald E. Posner, a specialist in obstetrics and gynecology, examined plaintiff on January 16, 1961 at the request of defendant and he testified that in his opinion, the elevated blood pressure and headaches of which plaintiff complained, following her pregnancy, were not in any way related to the accident. Even plaintiff's witness, Dr. Soileau, although he never examined plaintiff for this condition, testified that in his opinion such a condition would not be caused by injuries received in the accident.
Despite this expert medical testimony to the contrary, the plaintiff, and her husband and her seventeen year old daughter, testified that plaintiff continued to suffer considerably from her injuries up until the date of the trial, which was a year and a half after the accident, and that she would probably continue to suffer for an indefinite time in the future. However, as shown above, all of the expert medical testimony is to the effect that by January 5, 1960, which was approximately 3 months and 10 days after the date of the collision, the plaintiff had completely recovered from the injuries which she received in this accident.
The defendant argues strenuously that the damages awarded by the trial court were excessive. Defendant points out that Dr. Soileau testified the injuries sustained by plaintiff actually had no adverse effect on her pregnancy or on the child; that the multiple contusions over the lower abdomen and limbs were small and there was "nothing of any major consequence, as far as the contusions were concerned."; that the injury to the right shoulder was a "minor sprain"; that the lumbar sprain was "moderately severe, mild to moderate" and that the only symptom of cerebral concussion was dizziness immediately following the accident, plaintiff never having actually lost consciousness. Defendant cites Hardin v. Indemnity Insurance Company of North America, La.App., 115 So.2d 237, where the court awarded $200 for similar contusions. Anderson v. Morgan City Canning Co., La. App., 73 So.2d 196, where the court awarded $250 for a shoulder injury requiring the arm to be immobilized in a sling for approximately two weeks and the case of Robinson v. Great American Indemnity Company, La.App., 120 So.2d 855, where the court awarded $750 for a more serious cerebral concussion involving a laceration of the scalp. Defendant points out that the lumbar sprain must have been very mild to be of such short duration that plaintiff was free of pain from this injury after being in the hospital for only eight days.
*508 In our opinion, the award of $3,500 for physical injuries to plaintiff was excessive and should be reduced to $2,000. Without discussing in detail the cases cited by plaintiff, it will suffice to say that in those cases where the awards were more than $2,000, the injuries were more serious and of much longer duration.
The award of $1,000 made by the trial court for mental stress and anxiety due to plaintiff's concern for herself and her unborn child is, in our opinion, neither inadequate nor excessive.
For the reasons assigned, the judgment appealed from is amended by reducing the amount of the award for physical pain, suffering and disability from $3,500 to $2,000, making the total amount of the judgment the sum of $3,000 and as thus amended the said judgment is affirmed. All costs of this appeal are assessed against the defendant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.