CULPEPPER, Judge.
This case and its companion case, entitled Kelley-Coppedge, Inc. v. Davis et al., La.App., 134 So.2d 352, arose out of a collision which occurred on September 14, 1955, at about 5:15 p. m. on Louisiana Highway No. 31 near Breaux Bridge, Louisiana. Plaintiff, driving a 1949 Chevrolet pickup truck belonging to Kelley-Coppedge, Inc., was turning left off said highway into a private driveway when he was struck by a 1950 Dodge automobile, owned by Domigues Chevrolet, Inc., and being driven at the time by the defendant, Henry Davis, who was in the act of pass *350 ing plaintiff’s vehicle from the rear. Bou-dreaux’s suit is for personal injuries and Kelley-Coppedge’s suit is for damages to their truck. Also named as a defendant was United States Casualty Company, liability insurer of the Davis automobile. Aetna Casualty & Surety Company, the workmen’s compensation insurer of plaintiff’s employer, intervened praying for judgment in its favor and against the defendants for the amounts which it had paid to plaintiff under their compensation policy.
Plaintiff alleges the accident was caused solely by the negligence of the defendant, Davis, and, even if plaintiff was guilty of negligence, that Davis had the last clear chance to avoid the collision. In their answer, defendants allege that the said accident was caused solely by the negligence of the plaintiff and in the alternative that plaintiff was guilty of contributory negligence barring his recovery. The lower court found that the collision was caused solely by the negligence of plaintiff and dismissed his suit. From this judgment plaintiff has appealed. The intervenor did not appeal.
In a well considered written opinion the trial judge pointed out that the plaintiff’s testimony as to his actions leading up to the accident was vague, uncertain and contradictory. Plaintiff testified that he was driving approximately 40 miles per hour and when he was about l/^th of a mile, or 600 feet, from the driveway at which he intended to turn left, he looked in his rear view mirror, saw no cars coming and started slowing down. Then at transcript page 132 the plaintiff made this statement:
“ * * * And when I got to about forty to sixty feet from the driveway, I gave my signal and I started taking the other side, the center of the road, straddling the line, pulling towards that side to make my left turn.
“Q. How far were you from that driveway when you first gave your left hand signal? A. Between fifty or sixty feet.”
“Q. From the driveway? A. When I first gave my signal * * * ”
Then also at transcript page 132, the plaintiff testified as follows:
“Q. Mr. Boudreaux, what I asked you was this, how far were you from the bridge when you first give your left hand signal? That’s the question. A. I was over four hundred feet of the bridge.
“Q. You were? A. Yes, sir, because I always had a habit of putting my hand out whether I see traffic or not.”
Further conflicting testimony by plaintiff as to when he gave his hand signal for a left turn is found on transcript page 145 as follows:
“Q. And you started giving that signal how far back? A. I started giving that signal — oh, about at least a hundred feet back.
“Q. That was forty feet before you started to make your turn, right? A. That is right.
“Q. Or about two car lengths. A. That is right.”
Considering all of the plaintiff’s evidence, the only facts which we can reasonably deduce therefrom are that plaintiff was driving about 40 miles per hour and when he reached a point 600 feet from the driveway he looked in his rear view mirror, saw no cars following and began to slow down. It is impossible from the plaintiff’s evidence to determine when he gave his signal for a left turn. He actually started a gradual left turn and crossed the center line of the highway when he was from 40 to 60 feet from the driveway. At page 133 of the transcript plaintiff testified that before he started his left turn he had seen the Davis vehicle at a distance of four or five hundred feet behind him, but *351 he admits that he did not look to the rear again nor did he see the Davis automobile again until he was only 10 to 20 feet from the driveway and had almost completed the gradual left turn which he had started at a distance of 40 to 60 feet from the driveway. Plaintiff stated that when his truck reached the point at which the driver’s seat was approximately at the edge of the pavement, the left side of his truck was struck by the right front of the defendant’s automobile.
The evidence shows that Henry Davis was driving at a speed of about 60 miles per hour as he approached plaintiff’s truck on the highway and that Davis blew his horn twice and started to pass. Davis testified that as he was passing and when he had reached a point about 20 feet from plaintiff’s truck, the plaintiff put out his hand and started turning left across the center line of the highway. Davis immediately applied his brakes and turned to the left in an attempt to avoid the truck which was crowding him off the highway, but was unable to avoid the collision which occurred at about the entrance to the driveway.
Under the facts of this case plaintiff was clearly guilty of negligence proximately causing the accident. The applicable law is set forth in the recent case of Deshotels v. United States Fire Ins. Co., La.App. 3 Cir., 1961, 132 So.2d 504, 506 in which, under a similar set of facts, this court held as follows:
“In the instant case we have no difficulty in concluding that Mr. Soileau was guilty of negligence proximately causing the accident. He stated that when he was 100 or 200 feet from the intersection he looked in his rear view mirror for the last time and saw the McGee vehicle following behind and that he continued to slow down, pulled his left hand in and started turning, without again looking to ascertain the position of the vehicle to his rear. Clearly he did not yield the right of way as he is required by law to do. A similar situation was presented in the recent case of Johnson v. Wilson, 1960, 239 La. 390, 118 So.2d 450, 453, in which the Court held as follows:
■ “ ‘ * * * But, of course, defendant did not have the legal right to commence a left turn by driving over the center line when confronted with an unfavorable traffic condition and, had he checked to his rear, just before turning, he would have realized that the Johnson car was rapidly closing the 300 to 400 foot gap between the car and the truck, which he had previously observed, and prudence would have demanded that he wait until the speeding car either slowed or passed before beginning his angling turn. See Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209, and Leonard v. Holmes & Barnes, 232 La. 229, 94 So. 2d 241, 242, wherein we approved a ruling of the Court of Appeal that the driver of defendant’s truck was negligent “in that he failed to look to his rear just before attempting the left-hand turn, under the well settled law of this state that a person who attempts to make a lefthand turn on a public highway must be sure before doing so that the turn can be made in safety”.’ ”
The plaintiff argues, particularly from the physical facts, that the defendant Davis was also guilty of negligence in traveling at an excessive speed and in failing to avoid the accident after he saw or should have seen plaintiff’s lefthand turn signal. This argument has no merit. It cannot be reasonably concluded from the evidence that Davis was traveling at a speed in excess of the legal limit of 60 miles per hour. Furthermore, as stated above, it is our appreciation of the evidence that the plaintiff did not give his lefthand turn signal until Davis was in the act of passing and was only about 20 feet behind the plaintiff’s vehicle. In our view, Davis did *352 not have a chance to avoid the accident after he discovered or should have discovered that the plaintiff was going to negligently turn to the left in front of him. It is our opinion that neither the doctrine of last clear chance nor the doctrine of discovered peril has any application to the case at bar. See Johnson v. Wilson, supra.
For the reasons hereinabove set forth the judgment appealed from is affirmed.
Affirmed.