REID, Judge.
Cornelius Moorehouse, plaintiff, brought this action against Clarence A. Gallow and his insurer New Hampshire Insurance Company for alleged injuries sustained while riding as a passenger in a 1955 Chevrolet truck owned and at the time operated by Richard E. Downey. The al *63 leged accident occurred on October 29, 1961, at approximately 6:30 P.M. in West Baton Rouge Parish, Louisiana, on U. S. Highway 190, a four lane concrete highway, at a point approximately 9.4 miles west of Baton Rouge, Louisiana. The Chevrolet truck owned and operated by Richard E. Downey in which plaintiff was a passenger, was proceeding west in the outside lane of traffic. A 1956 Ford Tudor Sedan owned and operated by Wilbert O’Conner stopped, or nearly stopped in the inside eastbound lane of traffic, attempting to make a left turn and was struck from the rear by a 1954 Oldsmobile Fordor Sedan owned and operated by Clarence A. Gallow, knocking the Ford into the westbound lanes of traffic where a collision occurred between the Ford and the Chevrolet truck.
Defendants Clarence A. Gallow and New Hampshire Insurance Company filed an answer denying liability and alternatively alleging contributory negligence on the part of the plaintiff.
From a judgment in favor of defendants dismissing plaintiff’s suit, plaintiff prosecutes this appeal.
The case was consolidated for trial with two other suits arising out of the same accident, namely, Richard E. Downey, et al. v. Clarence A. Gallow, et al., No. 86,242, and Erma Lee Seals O’Conner, individually and as testamentary tutrix of the minor child, Alando Geard O’Conner v. Clarence A. Gallow, et al., No. 86,767.
The undisputed facts of this case show U. S. Highway 190 at the point of the accident consists of two 10 foot lanes for traffic traveling east and two 12 foot lanes for traffic traveling west, and that the east and west bound lanes are separated by a 4 foot median. The facts also show it was dark (it having been stipulated that sunset was on or about 5:30 P.M. on October 29, 1961), the weather was clear, the road was straight and hard surfaced, and traffic was fairly heavy. The actual point of the accident was in front of George Landry’s Store, situated north of U. S. Highway 190 where there is a break in the median between the east and west bound traffic lanes to afford passage between the east and west bound lanes. The record also discloses the O’Conner vehicle, a 1956 Ford, had been traveling east on the highway and was attempting a left hand turn into a private driveway at a point opposite the Landry store, which turn would necessitate the O’Conner vehicle crossing the west bound traffic lanes. The evidence further shows O’Conner had either come to a stop, was stopping or had slowed down in the left, or inside, easterly bound lane of the Highway. The Gallow vehicle, a’ 1955 Oldsmobile, was also traveling easterly on the highway in the left or inside lane of traffic and struck the O’Conner vehicle on the right rear and as a result of this collision the O’Conner vehicle was spun around in a counter clockwise motion into-the west bound lane and was struck a second time primarily on the left front side near the driver’s seat by the Downey truck.
In order for any of the plaintiffs in these three consolidated suits to recover, it must first be shown the defendant Gallow was negligent in the operation of his vehicle and such negligence was a proximate cause of the accident. Although there are no reasons for judgment on this point the Trial Judge must have held that the said Gallow was not negligent because if Gallow had been found negligent, even if he had found both O’Conner and Downey guilty of contributory negligence, the plaintiff herein who was a guest passenger in the Downey vehicle, would have been permitted to recover. In addition, the record is void of any evidence showing negligence on the part of Downey, driver of the vehicle in which this plaintiff was riding. Therefore, this Court will first discuss the question of liability on the part of the defendant Gallow in this suit as it applies to all three of the consolidated cases.
The position of each of the various plaintiffs in regard to liability is based *64 upon the proposition the accident was caused by the negligence of the defendant Gallow in striking the O’Conner vehicle while it was stopped in its lane of traffic preparatory to making a left hand turn and this negligence consisted of failing to keep a proper lookout; failing to have his vehicle under proper control; driving his vehicle at a high, dangerous and unlawful speed; operating his vehicle in a careless and reckless manner and following too closely the vehicle ahead; and driving at a speed in excess of a safe distance projected by his headlights.
The defendant alleges that the accident was caused solely by the negligence of the deceased, Wilbert O’Conner, who was driving his 1956 Ford without any tail lights and who, without giving any warning or signal whatsoever, brought his vehicle from the right hand lane of traffic into the left lane in front of the defendant, and then attempted to make a left hand turn without giving any signal or other indication which could be readily observed by following traffic.
The defendant’s testimony is to the effect that he was driving approximately 50 to 55 miles per hour in the right lane of the east bound traffic lanes and when he reached a point approximately one-half mile or more from the scene of the accident he moved into the left hand lane and proceeded on in an easterly direction. He further testified when he had reached a point approximately 150 feet from the point of collision, the O’Conner vehicle moved from the right hand lane to the left hand lane without giving any kind of signal and without having any tail lights or turn indicator and when he, Gallow, had reached a point approximately 80 feet from the point of collision he saw that the O’Conner vehicle was going to stop or slow down preparatory to making a left hand turn, again without giving a signal of any kind. He further testified he glanced to the right to see if he could swing into the right hand lane but that was impossible because a truck was in the right lane. He said he grabbed the steering wheel and pressed down on his brakes as hard as he could in order to avoid the accident.
Trooper Robert A. Wilson who investigated the accident stated he arrived on the scene of the accident at approximately 6:50, it was dark at that time, and the traffic was rather heavy in both the east and west bound lanes of traffic. Fie testified he questioned the defendant Gallow approximately 45 minutes after the accident and Mr. Gallow told him “he was coming east in the leftbound lane, the left hand lane of the eastbound traffic lane, and that he saw this car cut over but he couldn’t stop in time to avoid hitting the automobile and that he tried to dodge the automobile. Also, he told me that he did not see any tail lights on the vehicle.” Trooper Wilson testified the tail lights were not burning at the time of the accident and at approximately 11:15 on the night of the accident he went to the wrecker lot where he tested the tail lights and found that they would not burn. He stated he hooked up a battery to the O’Conner vehicle and found the headlights would burn but the rear lights would not. He further testified, “I looked, the wiring was bare. When I say that, there was no covering of the floor board, floor mats or anything had been uncovered off the wiring. I don’t recall whether the wiring was bare of insulation or not.” He testified they had removed the bulbs and took them to Troop A. Headquarters where they were tested and found to be good. Trooper Wilson also stated he had asked at the scene of the accident if there were any witnesses to the accident and the only name given was that of Austin Roubique who it later developed was following the Downey truck in a westerly direction and did not see the initial impact.
The plaintiffs rely heavily upon the testimony of Mr. Alvin Doyle, Jr., who gave his occupation as an automobile consultant and accident analyst and who one of the plaintiffs attempted to have qualified as an expert witness, which was denied *65 by the Trial Judge. Much of Mr. Doyle’s testimony is directed to the question whether the tail lights on the O’Conner vehicle were operational and, on certain assumptions based upon physical findings, whether the accident could have occurred as stated by the defendant Mr. Gallow. With regard to the first question Mr. Doyle testified his examination of the car on October 30, 1961, the day after the accident, indicated the headlight switch on decedent’s automobile was in an “on” position and the turn indicator was in a “down” position which would indicate a left hand turn. Mr. Doyle further testified that when the broken battery cable was connected the headlights would burn but the tail lights would not because the bulbs were missing. He further testified he found the wires leading to the tail lights and stop lights were cut in two and in his opinion there was no question the cut was caused by the impact. He further testified after connecting the wires he got current in the rear light sockets, thus concluding the tail lights were operational at the time of the accident. In regard to whether or not the accident occurred as stated by the defendant Gallow, Mr. Doyle, after making certain assumptions, testified an automobile going SO miles an hour could change lanes at no less distance than 150 feet if it made a very abrupt turn and that the normal turn procedure would be approximately 210 feet and would leave no tire marks. Plaintiffs contend according to this testimony the O’Conner vehicle would necessarily have had to change lanes at a distance farther from the point of impact than that testified by the defendant and since the record shows the deceased left no skid marks he would have had to reduce his speed in order to make his turn and, therefore, the defendant would have had considerable time in which to bring his automobile under control after the deceased turned into his lane. Mr. Doyle testified the stopping distance for an automobile traveling 50 miles an hour with locked wheels would be 110 feet and plaintiffs then contend this being true, the defendant was guilty of negligence in following the O’Conner vehicle at such a close distance, that is, 80 to 100 feet to the rear of the deceased’s automobile.
Erma Lee Seals O’Conner testified she had used the automobile driven by the deceased on that same day prior to the accident and the left turn indicator and inside blinker light both were in working order.
One Ernest Byrd, a witness for the plaintiffs, testified he was an eye witness to the accident and the decedent had come to a full stop prior to the accident. However, his testimony is so conflicting there is grave doubt as to whether he saw the accident and it must be assumed the Trial Judge completely ignored his testimony.
Both Cornelius Moorehouse and Richard E. Downey who were in the west bound vehicle testified they first saw the O’Conner vehicle when it was crossing the west bound lane in front of them backwards. It would appear that if the O’Conner vehicle was stopped with its blinker lights indicating a left hand turn was being attempted, as alleged, Mr. Moorehouse and Mr. Downey would have noticed the stopped vehicle.
The plaintiffs made much of the fact there are inconsistences in the testimony of Mr. Gallow on the trial of the case and as set forth in his deposition, which deposition the Trial Judge would not permit to be introduced on the trial of the case and only permitted to be introduced upon rehearing. It should be pointed out, however, the record clearly shows the conflicting parts of the deposition were read to Mr. Gallow on the trial and the Trial Judge had the benefit of hearing the portions read to Mr. Gallow and his answers.
With regard to the testimony of Mr. Doyle, the self-styled automotive expert, it is the opinion of this Court his testimony should not be given as much weight as that of the Trooper who actually investigated the accident at the scene. We repeat here what this Court had to say on rehearing in *66 Stevens v. Liberty Mutual Insurance Co., La.App., 133 So.2d 1:
“Recent jurisprudence tends to minimize the weight to be accorded so-called expert tests and experiments predicated upon assumptions not necessarily proven or upon variable factors which are not established with reasonable certainty and precision in the particular cases involved.”
$iter hearing all the witnesses and considering the evidence, the Trial Judge must have accepted as true the defendant’s statement as to how the accident occurred and the corroborative evidence introduced at the trial. We are in accord with this finding.
It is the opinion of this Court that this case clearly comes within the principles set forth in Guidry v. United States Casualty Co., La.App., 134 So.2d 319:
“Under the well settled law of this State, the driver of a motor vehicle who attempts to make a left turn on a public highway must ascertain before doing so that the turn can be made in safety. Leonard v. Holmes and Barnes, Ltd., 232 La. 229, 94 So.2d 241 (1957); Washington Fire & Marine Insurance Co. v. Fireman’s Insurance Company, 232 La. 379, 94 So.2d 295 (1957); Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); LSA-R.S. 32:236 (A). Also, a motorist intending to make a left turn on a public highway must not be content with merely holding out his hand or putting on his directional signal light, but he should look before turning to first see if such movement can reasonably be made in safety. Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Jenkins v. Fidelity & Casualty Company of New York (La.App., 1 Cir., 1957), 92 So.2d 120; Johnson v. Southern Farm Bureau Casualty Insurance Co. (La.App., 3 Cir., 1960), 124 So.2d 331.”
See also Mentz v. Falconnier, La.App., 144 So.2d 657, wherein the Court said:
“While it may be argued that the defendant was following plaintiff’s car too closely, the defendant had a right to assume that plaintiff would obey the law of the road and give a timely warning before turning. We cannot hold on the basis of the proof presented here that defendant’s action in following too closely was the proximate cause of the accident.”
It should be pointed out in the present case there is no finding of fact that the defendant was traveling too closely.
See also Clark v. Tolbert, La.App., 134 So.2d 605, and Crane et al. v. London, et al., La.App., 152 So.2d 631 (2 Cir., 1963). In the latter case the Court held:
“Principles are well established in the jurisprudence, as well as by statute, that a motorist, before turning from a direct line upon a highway, shall first see that such movement can be made in safety; that whenever the operation of any other vehicle may be affected by such movement, the motorist shall give a signal plainly visible to the drivers of such other vehicles of his intention to make the turn. Responsibility for ascertaining that a left turn across a highway can be safely made is placed upon the motorist attempting the maneuver. It is not sufficient that the motorist be content with merely holding out his hand or putting on his directional-signal indicator; he should look before turning to see that such movement can reasonably be made in safety.”
Plaintiffs cite many cases in their briefs in support of their position. However, the majority of the cases, including the recent case Pittman v. New Amsterdam Casualty Company, La.App., 152 So.2d 318, deal with situations where the overtaking vehicle ran into a vehicle proceeding in the *67 same line of traffic and the question of a left hand turn is not at issue.
For the foregoing reasons, the judgment of the District Court is affirmed.
Affirmed.