BAILES, Judge.
This tort action was filed by Carlos J. Cashio, plaintiff-appellee, against Robert William Moody to recover damages for personal injuries and property damage suffered by him in an accident involving plaintiff’s 1961 Chevrolet pickup truck and an automobile owned by Robert William Moody. Plaintiff sued for the sum of $3,015.60. After trial on the merits, the court a quo granted judgment in favor of the plaintiff in the amount of $1,000.60. From this adverse judgment, defendant appealed, It was stipulated between counsel, and with consent of the court, that the proper party defendant was New York Fire & Marine Underwriters, Inc. The latter named party was substituted for Robert William Moody.
The plaintiff alleged that on October 3, 1964, he was driving his pickup truck in an easterly direction on Goodwood Boulevard in the city of Baton Rouge; that he signaled his intention to make a left turn into East Airport Avenue and on seeing the vehicle immediately to his rear slow down to permit him to make his turn, he made his left turn and was heading his truck northerly to enter East Airport Avenue, when his vehicle was struck almost broadside by a 1964 Ford automobile driven by the son of Robert William Moody. Plaintiff alleged the aforementioned Ford automobile which just prior to the impact had passed the vehicle which was immediately to his rear and which had slowed to allow plaintiff to make said turn, was travelling at a high and dangerous rate of speed and was attempting to pass both vehicles. The essence of plaintiff’s charges of negligence against the driver of the Moody vehicle was that he was driving at a high and dangerous speed and attempted to pass plaintiff’s vehicle at an intersection. Defendant denied all of the charges of negligence, and alleges the accident was caused solely and entirely by the negligence of plaintiff in attempting to make an improper left turn, and alternatively pleaded, in bar to plaintiff’s right to recover, plaintiff committed contributory negligence in making an improper left turn. On these issues the case was tried.
The evidence shows Goodwood Boulevard is a two lane throughfare running in an east-west direction and East Airport Avenue is a street which extends in a northerly direction from Goodwood Boulevard. The two streets form a T intersection. It appears Goodwood Boulevard is about 22 feet in width, and although the width of East Airport Avenue is not shown, there is nothing in the record to cause us to believe it was other than the approximate size of Goodwood Boulevard. This being true there can be no question about the applicability of LSA-R.S. 32:76 which prohibits a following vehicle from passing a lead vehicle at an intersection. We experience no difficulty in holding the driver of the vehicle insured by the defendant guilty of negligence that was a proximate cause of the accident in attempting to pass the plaintiff’s vehicle in the intersection of Goodwood Boulevard and East Airport Avenue. See Nicolle v. Roberts (La.App. 1960) 117 So.2d 622.
The most serious question for us to resolve is whether the plaintiff is guilty of such negligence as to be construed contributory negligence and which was also a proximate cause of the accident and re- , suiting damages to the plaintiff.
*519 After discussing the testimony of the witnesses who testified in the trial court, the trial judge made the following conclusion:
“ * * *
“Therefore, the whole fault, the approximate cause of this accident was the negligence of the Moody driver in that he passed one car and was attempting to pass the truck at a high rate of speed and in an intersection which is also a violation of the law. * *
From his reasons assigned for the judgment in favor of the plaintiff, we conclude the trial judge found the driver of the Moody vehicle was driving at a high rate of speed, that he speeded around the vehicle which was in rear of plaintiff’s vehicle from 100 feet to 200 feet, that plaintiff looked to his rear and observed a trailing vehicle from 100 feet to 200 feet behind him, and that he had signaled his left turn. His evaluation of plaintiff’s testimony on the position of the Moody vehicle was that there was no vehicle between him and the trailing vehicle when he started his turn.
Certainly there can be, and frequently in this type accident, more than one proximate causation. See Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Company et al. (1962) 242 La. 471, 482, 137 So.2d 298.
There is no statement of law more firmly embedded in our jurisprudence than the pronouncement that before a motorist is legally privileged to make a left turn he must ascertain that it can be done in safety and without impeding the flow of traffic proceeding in either direction.
In Barras v. Fidelity and Casualty Co. of N. Y. (La.App. 1963) 152 So.2d 74, the court said on page 76:
“[4] Under the well settled law of this State, the driver of a motor vehicle who attempts to make a left turn on a public highway must ascertain before doing so that the turn can be made in safety. Leonard v. Holmes and Barnes, Ltd., 232 La. 229, 94 So.2d 241 (1957); Washington Fire and Marine Insurance Co. v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295 (1957); Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); LSA-R.S. 32:236(A). Also, a motorist intending to make a left turn on a public highway must not be content with merely holding out his hand or putting on his directional signal light, but he should look before turning to first see if such movement can reasonably be made in safety. Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Jenkins v. Fidelity and Casualty Company of New York, (La.App., 1 Cir., 1957), 92 So.2d 120; Johnson v. Southern Farm Bureau Casualty Insurance Company, (La.App., 3 Cir., 1960), 124 So.2d 331; Deshotels v. United States Fire Insurance Company, (La.App., 3 Cir., 1961), 132 So.2d 504; Guidry v. United States Casualty Co., (La.App., 3 Cir., 1961), 134 So.2d 319.”
From our appreciation of the physical facts that existed at the time of and immediately preceding the accident, we find the trial court fell into error in concluding plaintiff was free of negligence. This is made manifest by the testimony of the plaintiff himself, Mrs. Clark, the driver of the vehicle immediately in rear of plaintiff, and the investigating officer of the Baton Rouge Police Department.
We would mention first that the testimony of the investigating officer as to the location of the vehicles after the collision belies any assertion that the defendant’s driver was travelling at a high rate of speed. This officer found the plaintiff’s truck just off of the street in the northeast quadrant of the intersection and the Moody vehicle was in the northeast corner of intersection, however still located in the intersection proper. We find this contraindicates a high rate of speed for the Moody vehicle. It is true Mrs. Clark testified the Moody vehicle passed her at a very high rate of speed, yet she was unable to hazard an estimate of its speed.
*520 The investigating officer found the damage to plaintiff’s truck was on the left side, and the Moody automobile was damaged on the right front. He fixed the point of impact between the two vehicles in the westbound traffic lane about two feet from the center line of Goodwood Boulevard.
We find the following testimony of plaintiff pertinent in determining whether he discharged the duty he was under in making a left turn:
Page 45 of the Record. Direct examination by plaintiff’s counsel.
Q. Before you arrived at East Airport Drive did you notice whether there were any vehicles travelling behind you?
A. As I approached the intersection of East Airport Drive I looked — my glass was down and I looked back in the back and I could see a green station wagon behind me, I don’t know if I put may arm out or not, but I know she slowed down and I slowed down to make that turn and I was sure she knew I was going to turn because she had reduced her speed, we had both slowed down and I got into the turn and started this turn.
Q. Now, before you attempted to make your left turn how far behind you would you say that this green automobile was to your rear, approximately ?
A. I imagine she was at least anywhere from one hundred to two hundred feet behind me.
Q. And you observed that she reduced her speed in compliance with the reduction in your speed?
A. I could tell she knew I was getting ready to turn because she slowed down just as I did.
Q. Well, now, did you see any other vehicle behind you before you attempted to make and execute that turn?
A. I never did see anybody else.
* * * * * *
Q. Well, now, did you ever see this vehicle that struck your truck?
A. I never did see him until he actually struck me. I don’t know where he came from.
Q. Well, when I asked you if you had looked back why — he must have been there some place, why would you not have seen him?
A. He must have been behind the other car because I never did see him. I saw the green car and I could have seen the red one easily I guess but I never did see him.
Plaintiff further testified he had been driving between 30 and 40 mph prior to coming to the intersection, and on reaching the intersection he slowed to 10 to 15 mph. He reiterated he at no time saw the Moody vehicle prior to it striking him at the intersection.
In view of our reasoned conclusion the Moody vehicle was not travelling at a high rate of speed and the fact of the impact between the two vehicles at the intersection, it is obvious the Moody vehicle had to be visible to plaintiff and he would have seen him had he looked to his rear prior to his turning to the left. His failure to see the Moody vehicle approaching him from the rear and his movement across its lane of travel, renders plaintiff guilty of contributory negligence which was a proximate cause of the accident, thus barring plaintiff’s recovery from defendant.
For these reasons, the judgment of the trial court must be reversed, and there is judgment herein in favor of defendant and rejecting the demands of the plaintiff at his costs.
Reversed.