BAILES, Judge.
This suit involves an intersectional collision which occurred on September 27, 1972, in East Baton Rouge Parish at the junction of La. Highway 19 (Baker-Scot-landville Highway) and La. Highway 423 (Thomas Road). The crossroad intersection was controlled by a red-green stop signal and yellow no passing lines. Defendant-appellee (Israel Jones) was in the process of passing the plaintiff-appellant (Feltues Wilson) at the time of impact. Both vehicles were headed in a southerly direction on La. Highway 19, .which is a two-lane road at the place of the accident. The parties disagree on virtually every point as to what transpired before the accident.
The trial judge made no specific findings of fact regarding the event leading up to the accident. He concluded that “regardless of which version of the accident is accepted by the Court . . . I’ve got to find that the plaintiff was guilty of contributory negligence.” Judgment was rendered accordingly in favor of the defendant. Plaintiff then perfected this appeal.
After a review of the entire transcript of this suit, we conclude that the evidence best supports plaintiff’s version of the accident. Accordingly, the judgment appealed is reversed and rendered in favor of the plaintiff.
The testimony reveals plaintiff’s version of the facts to be as follows:
Plaintiff was the second car stopped at the light on La. Highway 19 where it intersects Thomas Road. He was headed in a southerly direction, and there were two or three cars behind him. When the light changed to green, the vehicle in front of plaintiff proceeded straight ahead. Plaintiff states that he waited for one car which was northbound on La. Highway 19 to proceed through the intersection, and then commenced his left turn onto Thomas Road. He asserts that his signal light was on and was operating properly. Plaintiff claims that it was at this point that defendant struck him, after having passed the line of traffic behind plaintiff at a speed of 30 to 40 miles per hour.
Defendant’s version of the accident is as follows:
Defendant states that he was in the vehicle stopped immediately behind the plaintiff at the traffic signal controlling the intersection of La. Highway 19 and Thomas Road. He asserts that plaintiff did not signal any intention to turn and appeared to be stalled when the signal light changed. Defendant then honked his horn (denied by plaintiff) and plaintiff still failed to move. Defendant contends that only then did he attempt to pass plaintiff’s vehicle, and that plaintiff collided with him when their vehicles were abreast of each other.
The plaintiff’s version of the facts is corroborated by the testimony of his sister who was a passenger in his pickup truck.
The plaintiff testified that he did not check action of traffic to his rear prior to commencing his left turn. He was not aware of the presence of defendant in the passing lane until defendant collided with his car.
We are convinced that the plaintiff’s version is more acceptable as the state trooper who investigated the accident testified that the defendant told him, in explanation of how the accident occurred, that as he approached the intersection he attempted to pass the vehicles ahead of him and as the (plaintiff) vehicle made a left turn he (defendant) turned left to try to avoid the left turning (plaintiff) vehicle.
The trial court found both drivers negligent. There is no question concerning the *233 negligence of appellee, Israel Jones, in attempting to pass at an intersection and in passing in a no-passing zone.
It is well settled that left turns are extremely dangerous and it is incumbent upon a motorist attempting such a maneuver not only to signal his intention to do so, but also to be alert to oncoming and overtaking traffic, and not attempt such a turn without first ascertaining that the movement can be made with reasonable safety. American Road Insurance Company v. Brown, 269 So.2d 539 (La.App. 1st Cir. 1972); LSA-R.S. 32:104. However, we find the facts of the instant case admit of an exception to this general rule.
Under the facts we find, with the intersection controlled by a conventional red-green traffic light, the lead motorist has the right to assume that following traffic will observe the duties imposed by law and common sense, such as that the following traffic will proceed within the speed limit, will not pass at an intersection and will keep a proper lookout and accord to such lead vehicle the right to go straight ahead or turn right or turn left. We hold that a motorist at an intersection controlled by a traffic light, insofar as the movement of trailing vehicles are involved, has the right of way and in the exercise of this right of way may make a left turn without first determining that such a turn does not impede the progress of a vehicle to his rear. ->
The trial court erred in holding plaintiff guilty of contributory negligence in this instance. The cases of Scrantz v. Aetna Casualty and Surety Company, La.App., 281 So.2d 820; Ulmer v. Travelers Insurance Company, La.App., 156 So.2d 98, and Johnson v. Wilson, 239 La. 390, 118 So.2d 450, are clearly distinguishable on the facts from instant case. None of these cited cases involve an intersection of roads or streets that cross each other and controlled by a red, amber and green traffic light.
Plaintiff claims special damages for loss of wages, medical expenses for treatment of injuries alleged received in the accident and general damages for physical injuries.
No proof of loss of wages was offered at the trial, thus this portion of his claim is denied.
Following the accident, plaintiff went to the Lane Memorial Hospital at Zachery, La., where he was examined by Dr. J. H. Brown. In furtherance of this examination x-rays of the skull, cervical, thoracic and lumbar spines were taken. All had negative findings of injuries. On his report, Dr. Brown noted “No bruises, lacerations, muscle spasm or other evidence of injury. All reflexes normal.” Plaintiff was given a prescription and sent home.
On October 4, 1972, plaintiff consulted Dr. William Rhea of the Industrial and Family Clinic. This doctor, in his report, diagnosed plaintiff’s injuries as “ * * * severe cervical and lumbosacral muscle strains and sprains, contusions of the chest wall. He has no permanent or total disabilities as the result of these injuries.”
Subsequent to the initial visit to Dr. Rhea, plaintiff was treated on October 5, 6, 9, 10 and 12, 1972. He was advised to see an orthopedist and an appointment was made for him. The next visit to Dr. Rhea was on March 12, 1973, at which time it was learned that plaintiff did not keep the appointment with the orthopedist that was made five months previously. Following the March 12, 1973, visit, plaintiff was again started on therapy and muscle relaxants and was additionally treated on March 15, 1973, April 17 and 25, 1973. Dr. Rhea last saw plaintiff on April 27, 1973. After the March 12, 1973, visit Dr. Rhea secured an appointment for plaintiff with Dr. Willard Dowell, who examined him on March 26, 1973. Dr. Dowell’s report is in the record. We find the concluding paragraph of his report pertinent. Therein he stated:
“This patient from his history sustained a sprain of his neck and lower back. I am really unable to account for *234 his symptoms of his left side going dead. Frankly, this patient’s complaints seem to me out of proportion to findings on physical examination. I feel that he should be encouraged to resume more activities and would probably benefit from some William’s type low back exercises. I do not feel that the question of impaired sensory change in his left forearm and hand is significant as it is too generalized and does not fit any sensory nerve pattern.”
Only the plaintiff testified to his injuries.
The reports of Doctors Rhea and McDowell were filed in evidence.
Particularly pertinent to our determination of damages is the inconsistency between Dr. Rhea’s finding of “severe cervical and lumbosacral muscle strains and sprains” and the total absence of proof of plaintiff’s condition in the five month interval between October, 1972, and March, 1973, nor is there any explanation by the plaintiff. Dr. Rhea makes no comment in his report.
We find no justification for Dr. Rhea’s bill subsequent to October 12, 1972.
The following special damage items are approved:
Drugs $ 8.24
Lumbo - sacral support 39.75
(Prescribed by Dr. Rhea)
Lane Memorial Hospital 1.15.00
Dr. Brown 25.00
Dr. Rhea (to October 12, 1972) 66.00
$253.99
An award of $750 is adequate compensation for the injuries sustained by plaintiff.
For the foregoing reasons, the judgment of the trial court is reversed and there is judgment herein in favor of plaintiff and against defendants, Israel Jones and The Travelers Indemnity Company, in solido, in the sum of $1,003.99, together with legal interest thereon from date of judicial demand until paid, and for all court costs.
Reversed and rendered.