McCALEB, Justice.
 

 This is a suit for damages arising out of a motor vehicle accident.
 

 Shortly before noon on September 12, 1960 Mrs. Charles O. Wesley was riding with her 75-year old father, George P. Smith, in his 1947 Ford one-half ton pick-up truck on Louisiana Highway No. 1027 in the town of Walker, Parish of Livingston. The truck was being driven west on the two-lane highway at a speed of approximately 15 miles per hour towards Mr. Smith’s home, which was located on the south side of the highway, where Mr. Smith 'intended to make a left turn into his premises. While the Smith truck was thus travelling; another one-half ton Ford truck (a 1959 model) .was approaching it from its rear. This truck was being driven by Mrs. William Peak, accompanied by her two-year old child. Mrs. Peak was travelling at a speed of 35 miles per hour and had reached and was overtaking the Smith truck as the latter was approaching the driveway of the Smith home. After Mrs. Peak had pulled over into the left or .east bound lane and was about to pass the Smith truck, Mr. Smith angled his truck into the passing lane and started to make a left turn into his premises. In the emergency thus created, Mrs. Peak pulled 'her car sharply over to the west-bound or right lane to avert a collision but, as she did' so. the left front bumper and.fender of her .truck .struck the left rear fender of the Smith truck, causing that truck to whirl completely around and come to rest facing the east.
 

 Mrs. Wesley received personal injuries in the accident and she, joined by her husband, originally instituted this suit for recovery of damages and expenses against Mr. and Mrs. William Peak. However, after ascertaining that the Peaks car.ried liability insurance, plaintiffs joined the insurance carrier, Home Indemnity -Company,- as a defendant and subsequently .they voluntarily .dismissed ■ the suit as to .the Peaks. Home Indemnity filed answer deny7 ing liability and also brought a third party demand against Mr. Smith contending that the accident was solely attributable to his fault.
 

 Plaintiffs allege in their petition that the accident was exclusively due to the negligence of Mrs. Peak in that she was speeding and that she failed to keep a proper lookout and did not have her truck under control.
 

 Defendants, on the other hand, assert that the accident was caused entirely by the imprudence of Mr. Smith who, it is aL leged, .made a sudden unsignal.ed left-hand turn into the path of Mrs. Peak’s truck, while she was in the act of overtaking and passing his truck.
 

 . In the district court there was judgment for Mrs. Wesley for $4,000 and in favor of
 
 *138
 
 Mr. Wesley for- $411.14. On appeal, the Court of Appeal,- First Circuit, with one judge dissenting, concluded that the accident was proximately caused by the negligence of Mr. Smith, in attempting to make a left turn without previously ascertaining that it could be safely executed, and that Mrs. Peak was without fault in the premises. Accordingly, the judgment of the district court was reversed and plaintiffs’ demand rejected. See Wesley v. Home Indemnity Co., La.App., 148 So.2d 333. We granted certiorari.
 

 After a careful examination of the record, it appears to us that the question of liability of Mrs. Peak and her insurer turns primarily on questions of fact — viz., whether Mr. Smith gave a visible signal for a left-hand turn which could or should have been seen by Mrs. Peak prior to the time she engaged in the passing maneuver or whether or not (if no visible turning signal was given) Mr. Smith’s manner of driving (speed, etc.) was otherwise such as to put a reasonably prudent driver on notice that he intended to make a left turn at that point.
 

 Since Mr. Smith’s truck was not equipped with electric turning signals or braking signal lights, he could only give warning of the left-hand turn (or even a deceleration maneuver by use of brakes) by a hand signal and this is exactly what he said he did. Indeed, his testimony is that he began signalling for a left turn by extending his arm outward as far back as 300 feet, before reaching his driveway; that his travelling speed was at all times around. 15 miles per hour; that he looked into his. rear-view mirror when he first gave the arm, signal 300 feet away and saw nothing but that he never looked to the rear again and that, when he began his left turn by angling over into the passing lane, he was struck-from the rear by the truck.
 

 By his own statement it is clear that Mr. Smith was negligent in turning when he did for he did not look immediately before he started the turn. It is well settled that a motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the State must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic and the giving of a signal is not' the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely.
 
 [1]
 

 Mrs. Peak’s version of the accident is that she was travelling at 35 miles per hour and had rounded a curve which is approxi
 
 *140
 
 mately one-quarter of a mile from the point of collision; that she was approximately 600 feet from the Smith truck when she first saw it; that Smith was proceeding slowly and that at no time while she was gaining on or overtaking this truck was there any indication whatever, either by hand signal or otherwise, that Smith was going to turn left; that, under these circumstances (the road being clear of traffic coming from the other direction), she felt that it would be safe to pass and that, when she began this maneuver, the Smith truck suddenly angled over into the passing lane and, in an effort to avoid the collision, she swerved back to the right but could not avoid hitting the Smith truck on the left rear fender.
 

 - It is seen from the foregoing that there is a direct conflict between Mr. Smith’s evidence that he gave a hand signal for a left turn and Mrs. Peak’s statement that he did not. Plaintiffs sought to corroborate Mr. Smith’s evidence by the testimony of Mrs. Wesley and a neighbor, a Mrs. McCray, whose home is located some 300 feet from the Smith driveway on the opposite, or north, side of the highway. Mrs. McCray stated that she was facing East on her porch while the Smith truck was approaching and saw Mr. Smith extend his hand to signal for a left turn as he passed her house. Although she also testified that he kept his hand extended until he reached his driveway, this is pure supposition on her part as her evidence is that she continued to face East and saw the Peak car pass a short while thereafter and did not turn until she heard the impact.
 

 Mrs. Wesley testified that her father extended his hand at 300 feet to signal for a left turn and, while she first stated that he kept it extended until the collision, even in the turning maneuver, she later admitted that she was not sure that his hand was extended so far out as to be seen.
 

 After scrutinizing this testimony and comparing it with the evidence of Mrs. Peak, we believe that the Court of Appeal made no mistake in concluding that the testimony of Mrs. Peak should prevail. If it be true that Mr. Smith extended his arm and signalled for a left-hand turn some 300 feet from the point of impact, it is unlikely that Mrs. Peak was in a position to see it at that time as it is evident that she had not yet completed the curve in the road located at the premises of Primes Building Materials, which was at least 600 feet away. Hence the arm signal, if given at 300 feet distant from the place where the turn was made, was ineffective notice to Mrs. Peak as she could not see it and Mr. Smith himself says that, when 'he looked to his rear upon first giving the signal, he did not see any approaching traffic.
 

 ‘ We also entertain much doubt that' the evidence justifies the conclusion that Mr. Smith continued to drive with his left
 
 *142
 
 arm and hand extended, as he says he did, until the moment of impact. The burden was upon plaintiffs to prove one or more of their charges that Mrs. Peak was guilty of negligence in failing to keep a proper lookout and that she was speeding and did not have her car under control. Our view of the testimony, like that of the Court of Appeal, is that plaintiffs have not established their allegations by a preponderance of evidence.
 

 During oral argument here the question arose for the first time whether Mrs. Peak was negligent in not sounding her horn to give warning of her intention to overtake and pass the Smith truck.
 

 An examination of the pleadings and the record satisfies us that this question has not been properly presented in the case. In the first place, Mrs. Peak is not charged with negligence in not sounding her horn and there is no affirmative evidence that she failed to do so. The unsolicited negative statement by Mrs. Wesley that she did not hear a horn blow is not sufficient.
 

 Furthermore, even if Mrs. Peak failed to sound her horn, this in itself would not constitute actionable negligence in the absence of a showing that it had causal connection with the accident.
 
 [2]
 

 Besides, it is doubtful, to say the least, that the requirement of R.S. 32:233B, that the driver of an overtaking vehicle shall give audible warning of his intention before attempting to pass a vehicle proceeding in the same direction,
 
 [3]
 
 was ever intended to apply to cases in which the vehicle to be overtaken is wholly within its own traffic lane and is not required to move over to permit the overtaking vehicle to pass. There are a, number of cases from the Courts of Appeal holding to this effect.
 
 [4]
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed.
 

 [1]
 

 . Leonard v. Holmes & Barnes, Limited, 232 La. 229, 94 So.2d 241; Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295; Johnson v. Wilson, 239 La. 390, 118 So.2d 450 and Gaspard v. LeMaire et al., 1963, 245 La. 239, 158 So.2d 149.
 

 [2]
 

 . See Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; D & D Planting Co. v. Employers Casualty Co., 240 La. 684, 124 So.2d 908 and cases there cited.
 

 [3]
 

 . This provision has been entirely eliminated from the Highway Regulatory Law, as amended by Act 310 of 1962. See R.S. 32:73, 75, 76 and 80.
 

 [4]
 

 . Cantrell v. H.
 
 G.
 
 Hill Stores (La.App.) 193 So. 389; De La Vergne v. Employers Liability Assur. Corp. (La.App.) 4 So.2d 66; Martin v. Globe Indemnity Co. (La.App.), 64 So.2d 257; Sanders v. Hisaw (La.App.) 94 So.2d 486; Benenate v. Brooks (La.App.) 95 So.2d 757; Marrero v. Richard (La.App.) 9S So.2d 305; Desormeaux v. Southern Farm Bureau Cas. Ins. Co. (La.App.) 108 So.2d 672; Service Fire Ins. Co. of New York v. Indiana Lumbermens Mutual Ins. Co. (La.App.) 111 So.2d 358; Babineaux v. Sims (La.App.) 111 So.2d 848; McCallum v. Adkerson (La.App.) 126 So.2d 835.