REID, Judge.
This is a suit for damages, both for personal injuries and property damage, arising out of an alleged accident which occurred on September 24, 1962, at approximately 9:35 A.M. in the Parish of East Baton Rouge, State of Louisiana. The accident occurred on U. S. Highway 61 at a point approximately 4.2 miles north of Baton Rouge, at which point U. S. Highway 61 is a two lane paved highway comprising a north bound and south bound lane. Involved in the accident were the plaintiff, Frank Clark who was driving a 1948 Ford and the defendant, Mr. Ewell H. Spillman who was driving a 1960 Mercury, the title of which although being in Mrs. Ewell H. Spillman was nevertheless community property and was, therefore, owned also by the defendant, Ewell H. Spillman. Mrs. Spill-man was riding as a guest passenger in the 1960 Mercury.
Prior to the accident both vehicles were traveling south on U. S. Highway 61 with the Clark vehicle preceding the Spillman vehicle. The accident occurred when the plaintiff, while attempting to make a left turn into his daughter’s private driveway, was struck by the vehicle driven by Ewell H. Spillman, who was in the act of passing plaintiff’s vehicle. The accident occurred on the north bound lane approximately 25 feet north of the private driveway in which the plaintiff was attempting to turn. After the impact the Clark automobile traveled approximately 275 feet before it stopped. The right front fender and the right door of the Spillman automobile was damaged, while the left front fender and the left door of the Clark vehicle was damaged.
The case was tried on June 11, 1964 and after the trial on the merits the Trial Judge rendered a judgment from the Bench in favor of the defendant rejecting plaintiff’s demands at his cost. The Trial Judge’s reasons for judgment were dictated into the record and on June 12, 1964 a judgment was signed in accordance with the Trial Judge’s reasons for judgment. It is from this judgment that an appeal is lodged.
Plaintiff on this appeal has two major specifications of error, one dealing with the refusal of the Trial Court below to admit into evidence testimony taken at a prior proceeding and the factual question concerning negligence. The latter allegation of error will be discussed first.
Mr. Ewell PI. Spillman’s testimony is to the effect that at the time of the accident he was proceeding south on U. S. Plighway 61 at approximately 9:30 A.M. at a speed of approximately 45 miles per hour. He stated that he had just passed a large freight truck and had pulled back *205 into his lane of traffic to let a north bound car pass and he then attempted to pass plaintiff’s Ford and that when he got close to the Ford it angled over the center line as a result of plaintiff’s attempt to make a left hand turn. Defendant testified that he slammed on his brakes and applied his emergency brake causing all four wheels to lock, but that despite his efforts to avoid the accident the two cars collided in the north bound lane. Mr. Spillman testified that after passing the truck there was approximately 300 feet between the truck and the Clark automobile and that he was probably 50 to 75 feet behind the Clark vehicle when he pulled into the north bound lane to pass. Mr. Spillman further testified that the plaintiff did not give any signal to indicate that he was attempting to make a left turn., The testimony shows that the plaintiff’s vehicle did not have an automatic turning device.
The testimony of Mrs. Spillman corroborates that of her husband and she testified that she did not see the plaintiff give any signal to indicate his intention to make a left turn.
Plaintiff, Frank Clark, testified that prior to the accident he had been driving at a rate of speed of 20 miles per hour, had stopped in the south bound lane of traffic waiting for some north bound cars to pass in order that he could make his left turn and that when he stopped a large truck pulled up behind him and also stopped. He further testified that his motor stalled and that it was necessary for him to place his hand back into the vehicle to start the car and to put the car in gear (the vehicle not having an automatic shift), and then proceeded to make his left turn without putting his hand out, testifying that the truck behind him had blocked his view and that he could not see past the truck, but only made the turn when the driver of the truck nodded his head.
The pertinent part of plaintiff’s testimony appears on Page 38 of the transcript of testimony, and is as follows:
“Q: How soon after — you said there were two cars passed while you were stopped, going in the opposite direction?
“A: There was three coming from * * *
“Q: Three?
“A: Yes sir, coming from * * *
“Q: One of them turned off and went somewhere * * *
“A: Over in the plant, over on the right hand side.
“Q : And two of them passed you ?
“A: Yes, sir, and went on up the road.
“Q: I-Iow soon after the last one passed you did you start your left turn?
“A: Well, by the time I got my car cranked up and went to turn * * *
“Q: Was your motor stalled?
“A: When I went to pull off, it killed, and then I started it off, and it went right on in, and when — I ain’t seen nothing. I couldn’t see behind the truck.
"Q : Did you look back?
“A: I looked through the mirror and the man nodded his head.
“Q: You didn’t look over your left shoulder, out the side window, to see if there was anything coming?
“A: No, sir, I didn’t look out. That truck was so wide behind me, I couldn’t see nothing behind me.
“Q: Pie wasn’t sticking over the center line, was he?
“A: Who, the truck?
“Q: Yes.
“A: The truck was just about that far from the center line.
*206 “Q: About how far ?
“A: Just about like that, just far enough, and I was ’way over next to the — I always stay over —plumb over on my right side.
“Q: You didn’t pull up close to that center line before you made your turn, so you could look back ?
“A: No, sir.”
The Trial Judge stated that if he took the testimony of the plaintiff as being true he was of the opinion that:
“The law requires the person making the left turn to signal to alert other motorists of his intention to malee the left turn and that he cannot rely on glancing into the rear mirror, which does not show whether or not any traffic is coming in the lane which he must cross. The Court feels that he should have taken time to look back out of his left front window to ascertain if he could make the turn safely.”
In addition to the testimony of plaintiff two other witnesses testified on his behalf, one being a Lubertha Jackson and the other Mable Edwards, the plaintiff’s daughter. Although testifying on behalf of the plaintiff their testimony was at variance with plaintiff at some points and the Trial Judge in commenting upon their testimony stated that if taken as true the plaintiff would certainly be guilty of contributory negligence.
In regard to the dispute between plaintiff and defendant as to whether or not the defendant had passed the truck, pulled back into the south bound lane and then attempted to pass the plaintiff as alleged by the defendant or whether the defendant had not passed the truck and the truck had stopped behind the plaintiff the Trial Judge held that this issue was irrelevant in that the plaintiff’s own testimony indicated that he was guilty of negligence proximately causing the accident.
With the other findings of the Trial Judge in regard to the question of negligence this Court is in agreement. There is no question but what an examination of plaintiff’s own testimony clearly shows him to be negligent and that for him to recover his testimony would have to be completely disregarded.
Plaintiff, in his brief relies upon LSA— R.S. 32:104, which reads as follows:
“A: No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
“B: Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.”
When the testimony of the plaintiff is viewed in relation to LSA-R.S. 32:104 quoted above there is no question but what the plaintiff did not comply with the requirements set forth in that statute.
In addition, the plaintiff cites many cases in support of his position and we have no^ quarrel with these cases, but do not feel that they are applicable to the case at issue.
It should be pointed out that the case of Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149, 1963, which the plaintiff cites as holding that it is not negligence per se to make a left hand turn in the event of an accident certainly afford no comfort to the plaintiff. In the Gaspard case the facts were undisputed that the driver of the pass *207 ing vehicle had spent the night m carousing and was suffering from the effects of his intemperance at the time of the accident and that he did not see the signal lights of the Gaspard vehicle giving notice of the driver’s intention to execute a left hand turn and then when he was 90 feet from the rear of the car he swerved over into the passing lane without slacking his 55 miles per hour speed, when in the Court’s words: “he should have been aware that a left turn was to be executed.” However, the Court held the party making the left hand turn negligent stating:
“But, according to his candid admission, young Gaspard failed, after making preparation for the left turn, to look a second time before attempting to execute it. If he had done so, he would have immediately become apprised of the fact that the LeMaire car was in the process of rapidly overtaking him; that it had moved over to the passing lane and that a left hand turn at that moment would unquestionably cause an accident. His failure to look the second time was a dereliction which had causal connection with the accident.”
See also Wesley v. Home Indemnity Co., 245 La. 133, 157 So.2d 467 wherein the Supreme Court in affirming a decision of this Court held as follows:
“By his own statement it is clear that Mr. Smith was negligent in turning when he did for he did not look immediately before he started the turn. It is well settled that a motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the State must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic and the giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely.”
It is, therefore, clear that the facts in this case show that the plaintiff was guilty of negligence proximately causing the accident both by virtue of violating LSA-R.S. 32:104 and by the jurisprudence.
In regard to the other allegation of error, that is, the refusal of the Trial Court to permit the entire transcript of testimony taken in Suit No. 93,046 on the docket of the 19th Judicial District Court entitled, “New Hampshire Insurance Company v. Frank Clark” which was apparently a sub-rogation suit, although the record does not clearly indicate that fact, the Trial Judge ruled that this transcript was inadmissible because the parties to the New Hampshire suit was not the same parties to this suit. The Trial Judge did permit plaintiff to have the record entered under LSA-C.C.P. 1636, which permitted it to go upon appeal.
For the above and foregoing reasons the judgment of the Trial Court is affirmed.
Affirmed.