ELLIS, Judge.
On May 2, 1963, at or about 8:30 A.M., plaintiff was driving a Ford automobile owned by her husband in a westerly direction on U. S. Highway 190 and when about one and one-half miles west of Albany, Louisiana, she turned on her signal lights for a left turn and while making such a turn she was struck by the automobile of Earl F. Burk, who was insured by the defendant herein, which had also been traveling in a westerly direction on said highway and was at the time in the act of passing traffic to the rear of the plaintiff just prior to the collision. As a result of the accident, plaintiff filed this suit for damages for personal injuries and her husband sued for property damage to the car, medical expenses and future medical expenses. He died prior to the trial of the case and his daughter, Mrs. Beatrice Hoover Lea, was duly appointed as the ad-ministratrix of his estate, and was substituted as party plaintiff in the place and stead of the decedent, Arthur B. Hoover. The case was duly tried and judgment rendered in favor of plaintiff, Mrs. Lula B. Hoover, in the full sum of $10,000.00, together with legal interest from judicial demand until paid and further judgment also rendered in favor of the administra-trix of the estate of Arthur Hoover in the full sum of $1758.60, together with legal interest from judicial demand until paid. From this judgment the defendant has appealed.
The following statute contains the provision governing forward drivers intending to make a left turn. LSA-R.S. 32:104 provides:
“A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
“B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last *550 one hundred (100) feet traveled by the vehicle before turning.”
The cases are legion which hold that the operator of a motor vehicle attempting to turn left across a public highway must ascertain before doing so that the turn can be made in safety and it is not sufficient that a motorist be content with merely holding out the hand or putting on a directional signal light, but he should look before turning to see first if such movement can reasonably be made in safety. Counsel for the plaintiff has cited the cases of Hinton v. Beyl, La.App., 122 So.2d 680, and Johnson v. Wilson, La.App., 97 So.2d 674, while counsel for the defendant has cited Clark v. Spillman, La.App., 173 So.2d 203; Anderson v. Brackin Motors, Inc., La.App., 95 So.2d 730; Barras v. Fidelity & Casualty Co. of New York, La.App., 152 So.2d 74; Wesley v. Home Indemnity Co., et al., 245 La. 133, 157 So.2d 467. The cases cited by plaintiff and defendant do not differ as to the well settled law but are factually distinguishable. The case of Barras v. Fidelity & Causalty Co. of New York, supra, cited by the defendant, contains a statement of the settled law as well as a short statement of the facts upon which the court dismissed the suit of plaintiffs therein and we quote:
“Under the well settled law of this State, the driver of a motor vehicle who attempts to make a left turn on a public highway must ascertain before doing so that the turn can be made in safety. Leonard v. Holmes and Barnes, Ltd., 232 La. 229, 94 So.2d 241 (1957); Washington Fire and Marine Insurance Co. v. Fireman’s Insurance Company, 232 La. 379, 94 So.2d 295 (1957); Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); LSA-R.S. 32:236 (A). Also, a motorist intending to make a left turn on a public highway must not be content with merely holding out his hand or putting on his directional signal light, but he should look before turning to first see if such movement can reasonably be made in' safety. Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Jenkins v. Fidelity and Casualty Company of New York, (La.App., 1 Cir., 1957), 92 So.2d 120; Johnson v. Southern Farm Bureau Casualty Insurance Company, (La.App., 3 Cir., 1960), 124 So.2d 331; Deshotels v. United States Fire Insurance Company, (La.App., 3 Cir., 1961), 132 So.2d 504; Guidry v. United States Casualty Co., (La.App., 3 Cir., 1961), 134 So.2d 319.
“It is apparent from the record that Mrs. Barras did not look to ascertain that she could make the left turn in safety. There was no evidence in the instant case to show that there were any cars approaching Mrs. Barras from the opposite direction. It is the opinion of this Court that the left turn made by Mrs. Barras was causally related to the accident, and the negligence on her part bars her and her husband from recovery in this case.”
In the case of Hinton v. Beyl, supra, cited by the plaintiff this court stated: “The operator of a motor vehicle who desires to make a left turn carries the responsibility of being certain that the turn can be made without danger to normal overtaking or oncoming traffic, and he must yield the right of way to such vehicles.”
This court then briefly discussed the facts upon which it denied the passing motorist damages for striking left turning truck and we quote:
“At the time he commenced his turn, Beyl had every reason to believe the maneuver could be executed in safety without unduly impeding or interfering with any traffic proceeding at a lawful rate of speed within the range of his vision. He had looked ahead and determined the roadway was free of oncoming traffic. After his truck was passed by the Lincoln, he consulted his rearview mirror and observed that his own truck was the nearest following vehicle. At *551 the time he glanced in his rearview mirror he did not and could not see plaintiff’s station wagon because plaintiff was then behind the Prevost truck. Under such circumstances, it was reasonable for him to assume the turn could be made without impeding the progress of any overtaking vehicle proceeding at lawful speed. The situation presented in his rearview mirror would have indicated to any reasonable individual that the nearest visible vehicle would not be delayed or impeded by his proposed action. Under such circumstances he was not required, under penalty of being held actionably negligent, to anticipate that an unseen motorist overtaking the nearest visible vehicle would do so at such speed as to make his turn dangerous to himself and such other motorist.”
It is therefore clear that the facts in each of these such cases are determinative of the decision and must be ascertained in order that the settled law might be applied.
In the present case the plaintiff was driving in a westerly direction on U.S. Highway 190 with the intention of turning into a private driveway approximately one mile and a half from the town of Albany, Louisiana, which necessitated her making a left turn at that point in order to enter this driveway. While traveling toward this driveway she was followed by a Mrs. Kinchen and behind the latter vehicle was some kind of a truck which no one seemed to be able to describe except Mrs. Kinchen thought it was a pick-up highway truck and behind this truck was the defendant, all traveling in a westerly direction. The plaintiff testified that she had been traveling at approximately 45 miles per hour from Albany, Louisiana, and that as she neared the private driveway she slowed down and realized that there were a car and a truck behind her so she turned on her signal light for a left turn, looked in her rear-view mirror and saw no car in the passing lane and when about one and a half or two car lengths from the private driveway she started making a gradual angling left turn across the eastbound traffic lane. She never heard a horn and never saw the defendant’s car and all she remembered was something like “an explosion” and she woke up in the hospital. The left front portion of the defendant’s car bent in the front door and the forward motion of plaintiff’s car also brought about the damage to the left rear door. It was brought out on cross examination that she had suffered a similar accident several years prior thereto, at a driveway adjoining the one she intended to turn into on the day of this accident. However, the facts were not shown and it is not to be construed as detrimental to her cause. There was no oncoming traffic and the highway is straight in the vicinity of the accident. Plaintiff testified that it was immediately before she started making the left turn that “I glanced up and then I looked back for the drive and I figured I’d better watch that drive because it was narrow.” In other words, she took a quick or brief look in her rearview mirror that was inside of her car when she was one and a half or two car lengths from the driveway. Plaintiff estimated that the car following her was 55 or 60 feet to her rear.
The record reveals that the defendant was following three cars, namely, the plaintiff the lead car, a second car with Mrs. Kinchen driving and behind that another motor vehicle which was possibly a pick-up truck. The traffic in front of him slowed down somewhat and he ascertained that for a half or three quarters of a mile there was no approaching traffic and decided to pass the vehicles in front of him. He pulled out into the passing lane and when he was parallel with the car or truck that was immediately in front of him he then saw the signal light of the plaintiff and at this time testified that the distance between plaintiff’s car and his passing car was 60 to 75 feet. He immediately blew his horn and as a matter of fact testified that he continued blowing *552 even after the impact. He is corroborated in the fact that he was blowing his horn just prior to reaching Mrs. Kinchen’s car as she testified to this fact. The plaintiff had her windows up and did not hear the horn blowing and proceeded to turn left at which time the plaintiff put on his brakes “and stayed on the pavement for the first few seconds and then when I saw the car was coming on then I started to leave the pavement and take to the ditch. And then as the picture shows there, my left wheels were on the gravel for approximately 30 feet.” When the defendant pulled out to pass, he estimated that his speed at the time he noticed the signal light when he was parallel to the last car in the line was 50 miles an hour and he was therefore traveling at a rate of 73 feet per second. He also testified that it would have been impossible for him to pull in between the cars at the 50 mile speed which he was traveling without most probably striking one of those cars so he decided that he would try to pull to his left, thinking that he might not strike the plaintiff’s car with the entire front of his car. This he did as he damaged the left front portion of his car and when the cars stopped they were almost facing exactly in the same direction south. The testimony is not positive but defendant is of the opinion that he struck the plaintiff’s car while the rear wheels were on the edge of the pavement before coming on the shoulder toward the driveway. Mrs. Kinchen did not know the speed of defendant’s car as it passed her but testified it appeared to her that it was “terrific”. However, we believe that from the physical facts and the amount of damage to the side of plaintiff’s car he was going somewhere within the range of the estimate of his speed of 50 miles per hour prior to applying his brakes.
Mrs. Kinchen estimated the distance between her car and plaintiff’s car just prior to the latter’s making the left turn at 40 or 50 feet while the defendant testified that the cars were close together as they had slowed down prior to the time he had passed. However, if there were 40 feet between the Kinchen car and the third car when defendant’s car got parallel with it, at which time he saw the signal light just prior to the left turn made by the plaintiff, the defendant was then within approximately 80 feet of plaintiff’s car. This is corroborative more or less of the testimony of the defendant that he was 60 to 75 feet from the plaintiff’s car when he first noticed the left turn signal and realized it would be impossible for him to avoid an accident if the plaintiff made a left turn across the highway in front of him. From the testimony we do not believe that the defendant was going at an excessive or unreasonable rate of speed in his passing maneuver. On the other hand, the plaintiff did not do what the law says one shall do before making a left hand turn — to ascertain that he can do so with reasonable safety. She testified that she merely glanced at her inside rearview mirror and then concentrated her attention on the narrow driveway. She turned on her signal light and then traveled one and a half to two car lengths before making a left turn and apparently never looked again. If she had performed her duty, she would have seen the defendant in the passing lane within 60 to 100 feet of her car and would have realized that she could not make this maneuver in safety. Under the well settled jurisprudence she is guilty of negligence which was a proximate and contributing cause of this accident and her recovery is barred.
For the above and foregoing reasons, the judgment of the lower court is annulled, set aside and reversed and judgment is now rendered against the plaintiff and in favor of the defendant dismissing the plaintiff’s suit at her cost.
Reversed.