205 So.2d 129 (1967)
Margaret D. NUGENT
v.
James C. GLOVER et al.
No. 7150.
Court of Appeal of Louisiana, First Circuit.
November 13, 1967.
Rehearing Denied December 19, 1967.
*130 John A. Salvaggio, of Garvey, Salvaggio & Prendergast, New Orleans, for appellant.
Iddo Pittman, Jr., Pittman & Mathony, Hammond, for appellees.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Plaintiff, Margaret D. Nugent, has taken this appeal from the judgment of the trial court rejecting and dismissing her action ex delicto seeking judgment for personal injuries, related medical expense and property damages sustained in an automobile accident which occurred when a vehicle she was driving was struck in the process of executing a left turn from a public highway into a private driveway. We find the trial court has correctly disposed of this matter and affirm the judgment rendered below.
The accident in question occurred at approximately 9:20 A.M., July 26, 1965, on Louisiana Highway 435, an undisclosed distance north of Abita Springs, St. Tammany Parish. At the situs of the accident Highway 435 is a two lane blacktopped highway running in a northerly-southerly direction. Mrs. Nugent, traveling southerly along the highway, intended to make a left turn and enter the private driveway leading into the home of an acquaintance situated on the east side of the road. Plaintiff's vehicle was struck on its left rear fender by the right front of an overtaking vehicle owned by defendant James C. Glover and being driven at the time by one Edwin Adams, a minor, who was operating said vehicle with the owner's consent. It is virtually undisputed that the point of impact occurred in the northbound lane of travel approximately three feet west of the eastern edge of the paved portion of the highway. Although the point is controversial, the evidence preponderates in favor of the conclusion plaintiff's vehicle was partially in the driveway at the instant of impact and we so find as a fact.
Counsel for plaintiff seeks to absolve appellant from any fault associated with the accident by strenuously contending the instant matter is not in truth a left turn case. In this regard it is argued that the accident did not occur because of plaintiff's failure to yield the right of way to an overtaking motorist, but rather that the accident resulted *131 from Adams' negligence in traveling at an excessive rate of speed and running into the rear of the Nugent car. On the other hand, defendant maintains the matter at hand is a typical left turn case in which the trial court properly rejected plaintiff's demand for negligently executing a left turn notwithstanding the fact Adams was in the act of passing plaintiff's vehicle on an open highway.
Adams testified he was traveling along the highway in a southerly direction at a speed of approximately 60 miles per hour (the lawful limit). Upon rounding a curve located an estimated three-fourths of a mile north of the point of impact, Adams observed the Nugent vehicle a considerable distance ahead proceeding in the southbound lane at a slow rate of speed. He accelerated to a speed of approximately 70 miles per hour with the intention of passing plaintiff's southbound automobile. When he reached a point about 100 feet from plaintiff's car, Adams pulled into the left or passing lane whereupon plaintiff activated her left turn signal indicator and abruptly commenced a left turn from the right or northbound lane. Adams immediately applied his brakes full force but was unable to prevent a collision. His vehicle slid to the point of impact leaving skid marks from the point where his brakes took hold up to the spot of impact previously noted. He was positive his car was completely in the passing lane when he observed plaintiff's left turn signal and attempted to stop.
Plaintiff testified in essence she was proceeding at a speed of approximately 30-40 miles per hour in the southbound lane. As she neared the driveway to her friend's premises she reduced her speed to approximately 5 miles per hour as she was aware the entrance was difficult to negotiate. Plaintiff concedes the driveway was so constructed that she could not make a slow gradual turn from the right lane across the left or northbound lane and enter the driveway, but rather she had to proceed to a point directly opposite the entrance before making her turn otherwise she would go in the ditch. When about 100 feet north of the driveway, she consulted her rear view mirror and noted Adams' overtaking vehicle approximately two blocks to her rear. She turned on her left turn indicator, reduced her speed from about 30 miles per hour to approximately 5 miles per hour and proceeded thusly in the southbound lane until she reached a point opposite the driveway. She then turned left into the driveway concentrating exclusively upon her intended maneuver. Just as the front of her car cleared the paved portion of the highway, she heard the screech of brakes and the impact ensued instantly. Plaintiff candidly admits she did not again look back immediately before commencing her turn. Plaintiff further admitted she was not good at estimating the speed of automobiles but felt that "* * * when a car is two blocks behind you, or even 300 feet, you should have time to turn over just half a road."
The accident was investigated by Don Keating, State Trooper, who concluded the impact occurred in the northbound lane three feet west of the eastern edge of the paved portion of the highway based on physical evidence noted. He also determined that at the moment of impact, the front end of plaintiff's vehicle was off the traveled portion of the highway partially in the driveway and the left rear of plaintiff's vehicle was entirely within the northbound lane of travel. Upon pacing the skid marks left by defendant's automobile, he found them to be approximately 147 feet in length from point of commencement to the point of impact.
A salient issue in dispute is the point of commencement of the skid marks left by defendant's vehicle. Adams, and certain other witnesses called on behalf of defendants, testified unequivocally the skid marks commenced in the northbound or passing lane. Conversely, plaintiff maintains the skid marks began in the southbound lane. On this premise counsel for appellant contends the accident resulted solely from Adams' fault in misjudging the speed of plaintiff's vehicle and was forced to apply *132 his brakes upon realizing he was about to run down the slowly moving vehicle ahead.
The weight of the evidence impels the conclusion that Adams had partially entered the northbound lane preparatory to passing plaintiff when he applied his brakes but that he had not at this time completely entered the left lane. We make this judgment on the strength of certain photographs introduced in evidence by both parties. The pictures in question reveal the presence of skid marks beginning in the northbound lane near the center line of the highway a considerable distance north of the driveway in question and proceeding thereto in an unbroken line along a course turning gradually toward the eastern edge of the paved surface of the roadway. The photographs clearly show the marks' abrupt ending directly opposite the driveway at a point approximately three feet inside the east edge of the traveled portion of the highway. The photographs do not, however, show the precise point at which the skid marks commence. They indicate, however, that the marks continue beyond the point at which they are visible in the pictures. In addition, while Trooper Keating at times stated the skid marks commenced in the southbound lane, his testimony as a whole justifies the finding that whereas the left wheel of defendant's car was in the northbound lane when brakes were applied, the right wheels were either on the center line or slightly within the right or southbound lane. On this basis we find that Adams had started into but had not yet completely gained the left lane when he applied his brakes. This finding, of course, negates plaintiff's contention that Adams was compelled to apply his brakes solely for the purpose of avoiding running into plaintiff's automobile from the rear due to mistaken judgment as to the speed of plaintiff's vehicle.
In support of plaintiff's position, counsel for appellant cites numerous cases in which a left turning motorist has been absolved from liability and permitted to recover damages sustained notwithstanding the accident occurred while such a maneuver was being attempted. We have carefully read each of the cited authorities and find them factually distinguishable from the case at bar.
It is so well settled as to require no citation of authority that in actions ex delicto the alleged negligence of either litigant is a matter to be determined in the light of the circumstances of each particular case.
In substance LSA-R.S. 32:104 provides that no motorist shall turn a vehicle from a public road onto a private driveway or turn left from a direct course without first ascertaining such maneuver may be accompublished with reasonable safety. It also stipulates that a motorist intending such a maneuver shall give notice of such intention by signal given continuously during not less than 100 feet traveled by his vehicle before turning.
Pretermitting all consideration of Adams' alleged negligence in driving at an excessive rate of speed and failing to have his vehicle under control, we find appellant guilty of negligence proximately causing the accident in question. Assuming arguendo, Adams' negligence as charged by appellant, defendant's plea of contributory negligence on the part of plaintiff is well founded.
It is well established jurisprudence that a high degree of care is imposed upon a left turning motorist. Not only must the left turning driver give appropriate signal of such intention, he must also determine the maneuver may be made with reasonable safety without endangering other motorists lawfully making use of the highway.
The record reflects plaintiff's candidly admitted inability to judge the speed of overtaking or approaching vehicles. It likewise reveals that after consulting her rear view mirror when 100 feet distant from the spot where she intended to turn, she never again checked to determine the proximity of the overtaking Adams car prior to actually beginning to traverse the opposing lane of travel. From the testimony of record, we *133 find that had plaintiff looked to her rear immediately before commencing her turn, she would or should have noted defendant's rapidly overtaking vehicle commencing to enter the passing lane. Such observation should have prompted her to the realization that her intended maneuver was fraught with peril to herself as well as the overtaking motorist. From the evidence it is clear that when plaintiff commenced her turn, Adams was approximately 250 feet behind. This is necessarily so inasmuch as the Adams vehicle left approximately 145 feet of skid marks. Allowing an additional 100 feet for reaction time in view of Adams' speed of 70 miles per hour, it follows that a distance of approximately 250 feet separated the vehicles when Adams noted the unfolding emergency and commenced to respond thereto. Had plaintiff consulted her rear view mirror, as a reasonably prudent driver, she should have noted the speed and proximity of the overtaking vehicle and waited safely in the southbound lane thus leaving the northbound lane clear for Adams to pass without incident.
Since each case must be resolved in the light of its own peculiar circumstances, we do not wish this opinion to be construed as holding that in every left turn case a motorist must look back immediately before turning under penalty of being held guilty of negligence. Whether or not such failure constitutes actionable negligence is the subject of individual determination in each particular instance. We find, however, that the instant matter falls within that category of cases wherein failure of the left turning motorist to look back immediately before turning constitutes conduct proximately causing the accident thus barring recovery. More specifically, we find this matter within the ambit of the rule enunciated in Wesley v. Home Indemnity Co., 245 La. 133, 157 So.2d 467, and followed in Clark v. Spillman, La.App., 173 So.2d 203.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.