SAVOY, Judge.
This is a suit for personal injuries and damages arising out of an automobile accident which occurred February 3, 1969, in Lafayette Parish, Louisiana. The accident occurred when plaintiff, Evelyn L. Nain, began a left turn into a private driveway and her car collided with an overtaking car driven by Robert L. Hernandez, which vehicle was insured by defendant. Evelyn L. Nain sues for personal injuries; and her husband, Robert J. Nain, joins in the suit for damages incurred by the community between the plaintiffs.
After trial on the merits, the district court found that the sole and proximate cause of the accident was the negligence of Robert L. Hernandez, and judgment was rendered in favor of Evelyn L. Nain for. $4,500.00; and in favor of Robert J. Nain for $1,751.00. From this judgment defendant has appealed on this Court. The plaintiffs did not appeal or file an answer to the appeal.
The issues raised on appeal are those of negligence, contributory negligence and quantum.
*793 The record shows that the accident occurred about 9:30 P.M. on the night of February 3, 1969, on U.S. Highway 167 at a point a few miles south of the city limits of Lafayette at the driveway of the home of the passenger in the lead vehicle, Mrs. Agnes Guidry. The highway in the area involved is two laned, is paved with concrete 18 feet wide, and has shoulders of shell 6 to 8 feet in width. Going north towards Lafayette, the highway makes a long curve to the right and then straightens out a distance before the driveway involved in this case. A ditch runs along the west side of the highway, and the driveway involved crosses a culvert. At the time of the accident, it was night, and the weather was cool and fair. The speed limit in the area is 60 miles per hour.
Immediately before the accident three cars were traveling in a northerly direction along the highway. The lead car, a Rambler, was being driven by Evelyn L. Nain. Mrs. Agnes Guidry was seated in the right front seat of plaintiffs’ car. The second car was occupied by Claymond Jean Louis and Mary Jean Louis. Defendant car, a Lincoln, was being driven by Robert Hernandez; and his brother, Ricky Hernandez, was seated in the right front seat. Just prior to the accident the Hernandez vehicle began to pass the two forward cars, and the plaintiff began making a left turn. These two cars collided violently, with the front portion of the Lincoln striking the left side of the Rambler. There is a dispute as to whether the impact occurred entirely within the southbound lane of traffic on the highway or whether the Rambler had reached a point partly onto the west shoulder of the road. Photographs of the Rambler show it must have been turned almost 90 degrees across the highway as it was struck squarely in the center of the left side.
Plaintiff, Evelyn L. Nain, testified she was taking Agnes Guidry home; that she was driving about 35 to 40 miles per hour as she rounded the curve; and she was aware of a car that had been following her. She turned on her left turn signal lights at a trailer park, turned around and saw the car following about one or two car lengths behind her and slowed to about 30 to 35 miles per hour. As she approached the driveway where she was to turn, she slowed by using her brakes to a speed of about 10 to 15 miles per hour. She testified she last looked to observe the following traffic when she was about 10 to 15 feet from the driveway, saw only the car about one or two car lengths behind her, and began the left turn at about 10 to 15 miles per hour. There was no oncoming traffic at the time. She stated the front of her car had left the road and entered into the driveway at the time of impact, and that she heard the shells “crunch” under the front tires. She testified she had used the rear view mirror on the left side of her car, and, also turned her head on both occasions that she looked to observe following traffic. She did not see the Lincoln before the impact. She estimated that the curve in the highway ended about 100 feet south of the driveway. She had been to Mrs. Guidry’s house on three or four occasions, once earlier that evening.
Agnes D. Guidry testified plaintiff started the left turn signals on the car about 300 feet away from the driveway, at about the entrance to the grocery store and trailer park. She estimated that the curve in the highway ended at a point about 50 to 100 feet south of the driveway to her home. She testified she had told plaintiff to put on her turn signals as there had been a number of accidents in the area. She stated plaintiff was driving about 50 miles per hour when she turned on the turn signals; that plaintiff’s car then began slowing down and was going about 10 to 15 miles per hour as it began to turn. Mrs. Guidry also testified she was aware of the following car for quite a while; that it was following about two car lengths behind when plaintiff started the turn signals; and that she looked back and saw the following car at about the same position when they were about 50 feet *794 from the driveway. At that time she told plaintiff the car was still following' her. Mrs. Guidry did not see the Lincoln until about the moment of impact when she saw a flash of light and felt the impact. She heard no braking noises. She did not notice plaintiff turn her head to look for following traffic. She did not notice plaintiff turn the signals off and then on again, but thought she would have if plaintiff had done this. She. heard the left turn signals clicking. She stated plaintiff’s car had turned into the driveway at the time of the collision, although she could not remember how far they had turned in; and the car was moving real slow, about 10 miles per hour at the moment of impact.
Robert Hernandez, the driver of the car insured by defendant, died from causes not related to the accident herein prior to the trial of this case. His brother, Ricky James Hernandez, age 14, was a passenger in the Lincoln. He testified he did not recall seeing any left turn blinking lights on the Rambler, and he could not estimate the speed his brother was driving the Lincoln. This witness was only 4 feet S inches tall, and stated that to see over the dashboard of the Lincoln he had raise himself up on the seat by pushing down with his hands. His testimony seemed confused and was conflicting in places.
Claymond Jean Louis testified he had been following the lead Rambler a few minutes maintaining a distance behind of three to five car lengths. The Rambler was going about 55 to 60' miles per hour. He noticed left turn signals on the Rambler when it was about 250 to 300 feet from the driveway, which were apparently turned off, and then back on again when the car was about 150 feet from the driveway. In a prior deposition, he stated the Rambler was about 300 feet from the driveway when the signals were turned on the second time. After plaintiff put on her blinkers, she slowed down gradually. He was driving about 50 to 55 miles per hour, and first noticed the Lincoln as it passed him at an estimated speed of 70 miles per hour. He did not hear a horn or notice any lights flicker. At the time the Lincoln passed, the Rambler had slowed considerably. He estimated the Lincoln passed him at a point about 200 to 300 feet from the point of the accident; and that the Lincoln was slightly ahead of him, possibly a car length, at the time the Rambler began its left turn. From its position the Lincoln appeared to be braking before the accident. He estimated the Rambler was moving about 10 to 15 miles per hour at the time of the collision, and that he was about 200 to 300 feet behind the Rambler at the time of the accident. He did not recall seeing any brake lights on the Rambler, and did not believe that the front wheels of the Rambler had gone off the highway at the time of the accident. He testified the Lincoln was still on the southbound lane of the highway at the moment of impact.
Mary Jean Louis was riding in the car with her husband. She testified they were proceeding 50 to 55 miles per hour about three or four car lengths behind the Rambler; that she did not recall seeing any turn signals, but realized the car ahead was slowing down to make a turn. She looked left and saw lights in the left lane and saw the Lincoln passing about the time the Rambler began its left turn. The two cars collided in the southbound lane on the highway. She stated the Lincoln was going at a very high rate of speed when it passed, estimated at 70 miles per hour, and that the Rambler had slowed to about 15 miles per hour at the time of impact. At the time of the collision, the car in which she was riding was moving slowly and was about two car lengths from the point of impact.
The record shows the curve was a gradual one, possibly seven/tenths of a mile in length. Plaintiff, Robert J. Nain, a draftsman, testified the distance from the driveway to the curve was about 77 feet. It was stipulated that Bob Landry, an ad *795 juster, would testify as to certain distances shown by photographs offered in evidence. These photographs indicate that the highway was visible from the driveway to the grocery store and trailer park a distance of over 332 feet, although part of that distance was possibly located within the gradual curve in the highway.
The first issue is whether or not Robert Hernandez was guilty of negligence which was a proximate cause of the accident. The district court found that he was negligent in the operation of his car at too great a speed. We find that the evidence substantiates this finding. Not only was Hernandez negligent in driving at night at a speed in excess of the speed limit, but he was also negligent in committing himself to pass the slower moving vehicles before he was in a position to observe that the lead car was in the process of making a left turn. Hernandez should have started his passing maneuver with more caution and control of his car at a lesser overtaking speed, and in such a manner so as to observe whether the lead car was signaling a turn. His acts of negligence proximately caused the ensuing accident.
The next issue is whether or not plaintiff was guilty of contributory negligence. Defendant maintains that the Hernandez car was in the passing lane and visible for a sufficient length of time for plaintiff to see it if she had made proper observation prior to turning. Plaintiffs maintain that because of the curve in the road and the high rate of speed that the Hernandez car was overtaking the two cars at night, plaintiff did not have a reasonable opportunity to observe the overtaking car in order to avoid the accident.
The general rule of law applicable to a left turn as involved in this case is found in Wesley v. Home Indemnity Company, 245 La. 133, 157 So.2d 467 (1963), wherein the court stated:
“ * * * It is well settled that a motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the State must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic and the giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely.” (Emphasis added.)
After having carefully considered the record in this case, the Court finds no manifest error in the holding of the district court that plaintiff was not guilty of contributory negligence.
In reaching its decision as to the facts of the accident, the district court accepted the version of the accident as related by plaintiff and Agnes Guidry. Under this version plaintiff was not in a position to reasonably ascertain that a left turn would result in an accident. Although the evidence is conflicting as to exactly where the curve ended in relation to the driveway, considering the speed of the Hernandez vehicle, the passing maneuver must have begun within the curve. Since the accident occurred at night, the second car and its headlights would have largely obstructed the view of the approaching Lincoln automobile. The curve may have also decreased plaintiff’s opportunity to see the Hernandez car, especially in view of the fast rate of speed that it was overtaking the two forward vehicles. We find that plaintiff fulfilled the duties imposed upon her by law of giving a left turn signal and of checking to the rear immediately before making her turn.
The preponderance of the evidence shows that the second car was following the Rambler at about two to four car lengths, and that both vehicles slowed from a speed of about 50 miles per hour to a slower rate of speed as they continued along the highway from a point about 300 feet from the driveway. During this time, the Hernandez car was approaching at 70 miles *796 per hour. As the two forward cars neared the driveway and the Rambler slowed to about 15 miles per hour, the Hernandez car was then overtaking the forward cars at possibly four to five times their speed. At 70 miles per hour, this car would have been traveling 103 feet per second. Considering the facts and the circumstances of this case, we find that plaintiff could not be held to have anticipated that defendant car would overtake her so suddenly. Procell v. Strange, 203 So.2d 739 (La.App. 3 Cir. 1967), writ refused. This Court affirms the finding of the district court that the sole proximate cause of the accident was the negligence of Robert Hernandez.
Defendant cites the case of Credeur v. American Employers Liability Insurance Company, 220 So.2d 114 (La.App. 3 Cir. 1969). This case is distinguishable from the instant case in several particulars. In that case the accident occurred during the day; there was no showing that the speed of the overtaking car was such as to make it impossible or difficult for the plaintiff to have seen it under the facts of the case; and the left turning driver failed to look for overtaking traffic immediately before beginning her turn, making her last observation to the rear about 100 to 150 feet before her turn. This Court upheld the findings of fact by the district court that both the overtaking and left turning drivers were guilty of negligence proximately causing the accident.
The final issue is that of quantum. Defendant maintains that the award granted Mrs. Nain for personal injuries is excessive. Mrs. Nain was rendered unconscious by the accident for a period of about ten minutes. She sustained a cerebral concussion, a severe laceration of the right brow, a fractured left clavicle, abrasions of both legs, a low back injury, fractures of the pubic rami, internal injuries, and general bruises and abrasions. She also had teeth injuries, losing two fillings and a bridge was broken from the accident. She was hospitalized for five and one-half days, was confined in bed at home a month and then was unable to perform normal household duties for another month. She wore a brace for her left shoulder for about six weeks. As of the date of the trial, September 24, 1969, some seven and one-half months after the accident, she was still taking medication for headaches and pains in her shoulder and back.
Dr. William A. Bernard, a general practitioner in Lafayette, saw plaintiff the day following the accident. He treated her for her injuries, and took eight sutures to close the laceration of the right brow. Xrays showed a comminuted fracture involving the midshaft of the left clavicle, and also some question of a possible transverse fracture of the second lumbar vertebra. Xrays of the skull were negative. He testified plaintiff was totally disabled for about two months. He treated plaintiff until July 1, 1969, and stated in his deposition on September 22, 1969, that plaintiff would probably still be having some mild discomfort and headaches.
Dr. Guy J. Dunning, an orthopedic surgeon of Lafayette, examined plaintiff on August 26, 1969, and found that she had a healing fracture of the superior and inferior rami of the left pubic bone, with displacement of the superior rami. Callus had formed between the fragments and healing was progressing. He believed the fractures would probably heal within five to six months after August, 1969.
Considering the injuries received by Mrs. Nain, this Court finds that the award of $4,500.00 was well within the range of discretion afforded the district court in fixing damages; and accordingly, the award is affirmed as not excessive.
For the reasons assigned, the judgment appealed from is affirmed. All costs of appeal are assessed against defendant.
Affirmed.