277 So.2d 685 (1973)
Reverend James L. ADAMS, Plaintiff-Appellee,
v.
The TRAVELERS INDEMNITY COMPANY et al., Defendants-Appellants.
No. 12080.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1973.
Rehearing Denied May 30, 1973.
Theus, Grisham, Davis & Leigh by R. L. Davis, Jr., Monroe, for defendants-appellants *686 The Travelers Indemnity Co. and Raymond Hunter.
Holloway, Baker, Culpepper, Brunson & Cooper by Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Brittain, Carver & Williams, by John G. Williams, Natchitoches, for intervenor-appellee.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
Plaintiff, Reverend James L. Adams, brought this action ex delicto for damages for personal injuries and medical expenses resulting from an automobile accident which occurred in Jonesboro on May 20, 1970. Plaintiff's 1968 Buick was struck by a Chevrolet automobile owned by McDonald-Gilbert Builders Supply Company, Inc. and operated by its employee, Raymond Hunter. Hunter and The Travelers Indemnity Company, liability insurer of the car Hunter was driving, were named defendants herein.
Southern Farm Bureau Casualty Insurance Company intervened in the lawsuit for $3,184.34 in medical payments it paid plaintiff pursuant to a policy in effect at the time of the accident. After trial the district court found the sole proximate cause of the accident was the negligence of Raymond Hunter and granted jugment in favor of plaintiff against Travelers and Hunter in solido for $6,500, representing $5,000 for pain and suffering and $1,500 for medical expenses over and above the amount paid by Southern Farm Bureau. Intervenor, Southern Farm Bureau, was granted judgment for $3,184.34 against these same defendants. Defendants appealed to this Court and plaintiff answered the appeal asking for an increase in the award of the district court. We amend the judgment of the district court to reduce the amount awarded for medical expenses and in all other respects affirm the judgment.
The accident in question occurred at approximately 6:00 p.m., on May 20, 1970, on Louisiana Highway 4 within the city limits of Jonesboro. At the situs of the accident, Highway 4, commonly called the Chatham Highway at this location, is a two-lane, two-way, blacktopped highway running in an easterly-westerly direction. Plaintiff was proceeding in a westerly direction on Highway 4 and had begun executing a left turn onto McDonald Street which forms a T-intersection with Highway 4 when the left front side of his car was struck by the right rear portion of the car driven by Raymond Hunter. Hunter had also been traveling westerly on Highway 4 behind plaintiff's vehicle and the accident occurred at a time when Hunter was passing and plaintiff was turning left into McDonald Street which intersects from the north.
Following the collision Hunter proceeded on down Highway 4 several hundred yards, then turned around and returned to the scene. Plaintiff, meanwhile, had pulled his car onto McDonald Street off Highway 4 so as not to block other traffic on the highway. By agreement between the parties the police were not summoned to the scene.
Plaintiff testified he had engaged his left turn signal about one block before McDonald Street and had checked both his side mirror and rear view mirror and saw no cars. He further testified that he did not see Hunter until just before he started his left turn at which time Hunter was about a block behind him in the right-hand lane. As he began executing his left turn he became aware that Hunter's car was then coming down the middle of the highway at a very high rate of speed. Realizing he could not complete the left turn without having a collision plaintiff jerked his vehicle back to the right but Hunter's car struck the left front part of his car as Hunter was returning to the right lane after almost completing the passing maneuver. Plaintiff and his brother-in-law, J. T. Giambrone, who was a guest passenger in plaintiff's car, both testified Hunter was driving *687 at a speed greatly exceeding the posted 25 miles per hour speed limit. Giambrone also corroborated plaintiff's testimony that he had engaged his left turn signal approximately one block prior to the point where he attempted to execute the left turn and that he heard no horn sounded by Hunter.
Hunter testified he had turned onto Highway 4 several blocks from where the accident occurred and then noticed plaintiff's car proceeding west ahead of him. He stated plaintiff slowed down several times so he decided to pass him, blew his horn two or three times, and was in the left-hand lane passing the plaintiff when plaintiff suddenly turned left without warning at the intersection of Highway 4 and McDonald Street, striking Hunter's car. Hunter admitted that the plaintiff's car struck the right rear of his car and that he then proceeded on down Highway 4 to a point where he could turn around and return to the scene of the accident.
A motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic. The giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely. See Wesley v. Home Indemnity Co., 245 La. 133, 157 So.2d 467 (1963); Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Nain v. State Farm Mutual Automobile Insurance Co., 241 So. 2d 792 (La.App.3d Cir. 1970); Hayes v. Travelers Indemnity Company, 213 So.2d 119 (La.App.3d Cir. 1968); Nugent v. Glover, 205 So.2d 129 (La.App. 1st Cir. 1967); LSA-R.S. 32:104.
The law is equally clear that a motorist has the unquestioned right to assume the following traffic will observe all the duties imposed on it by law and common sense, such as that the following traffic will proceed within the speed limit and will not pass at an intersection where passing is prohibited; and moreover, that the drivers of such vehicles are keeping a proper lookout. See Porter v. Sprawls, 227 So.2d 792 (La.App.4th Cir. 1969); Procell v. Strange, 203 So.2d 739 (La.App.3d Cir. 1967); Breland v. American Insurance Company, 163 So.2d 583 (La.App.2d Cir. 1964); Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (La.App.2d Cir. 1961).
Plaintiff's testimony, taken as a whole, although somewhat confusing at points, shows his first observation was made about one block before his intended turn and that he saw no traffic to his front or rear. He next looked immediately before he started his turn at which time he saw Hunter for the first time behind him in the right-hand lane and he felt at that point he could execute his turn safely. Plaintiff's final observation occurred after he had started his left turn at which time he observed Hunter in the middle of the road overtaking plaintiff at a high rate of speed. It was at this point that plaintiff realized he could not complete his turn safely and he attempted to avoid a collision by turning back to the right. These actions taken by the plaintiff met all the requirements imposed on him under the circumstances and do not constitute contributory negligence on his part.
The defendant Hunter was negligent in that he attempted to pass plaintiff's automobile at an intersection. Such action violates LSA-R.S. 32:76, subd. A(2) which states:
"A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:

* * * * * *
"(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;. . ."
See Herget v. Saucier, 223 La. 938, 67 So. 2d 543 (1953); Hollabaugh-Seale Funeral Home, Inc. v. Standard Acc. Ins. Co., et al., *688 215 La. 545, 41 So.2d 212 (1949); Spell v. Travelers Insurance Company, 232 So.2d 133 (La.App.3d Cir. 1970); Soileau v. Continental Insurance Company, 228 So.2d 522 (La.App.3d Cir. 1969); Roy v. Edmonson, 221 So.2d 583 (La.App.4th Cir. 1969).
In addition, defendant Hunter was traveling at a rate of speed greatly exceeding the posted speed limit at the scene of the accident. Plaintiff and his brother-in-law both testified Hunter was speeding and this testimony was not rebutted by Hunter, who testified only that he did not know how fast he was going.
The district court awarded $5,000 for physical injuries and $4,684.34 for medical expenses. Appellants urge that the district court's award was manifestly excessive for the relatively minor injuries, if any, received by plaintiff in this accident. Appellants argue that plaintiff's complaints of pain and disability and the substantial medical expense incurred by him relate to injuries received in previous accidents or to maladies unrelated to this accident.
The evidence as to plaintiff's injuries and medical expenses consists of the testimony of plaintiff and his wife; reports of several doctors who examined and/or treated plaintiff either before or after the accident, or both; records of Oschner clinic covering periods both before and after the accident; and a list of medical expenses stipulated as having been incurred after the accident but which defendants contend are not related to the accident.
Plaintiff had been involved in three previous accidentsthe first in March, 1967, the second in February, 1968, and the third in June, 1968. The accident involved in the present litigation happened in May, 1970. All of the previous accidents involved injuries to his back and neck for which he received extensive treatment over a considerable period of time dating from the first accident. He had been relatively free of complaints for several months prior to the last accident, but was receiving some medical attention from time to time.
In the last accident, damage to the two vehicles was light and the impact was not severe. Although plaintiff felt shaken up, he did not consider himself injured. However, the night after the accident he developed pain in his neck and lower back and down into his legs. He consulted Dr. McKeithen in Jonesboro and was hospitalized at the Hodge Clinic where he was treated with traction. He was referred to Dr. Goodman, an orthopedic surgeon in Shreveport. Plaintiff was in the Highland Hospital in Shreveport for about a week beginning June 11, during which time he was treated with traction and therapy. Dr. Goodman diagnosed plaintiff's condition as muscular strain in the cervical and lumbar area, noted improvement during his stay in the hospital, and predicted a complete recovery without permanent disability.
Plaintiff was admitted to Oschner Foundation Hospital on June 29 and discharged July 11, where extensive examinations and tests were made. Although the hospital's records and notes were filed into evidence, there is no doctor's report expressing any conclusion as to diagnosis or prognosis or relationship of complaints to the last accident. The hospital records indicate that in addition to tests related to neck and back pain, plaintiff was examined for kidney problems, skin disorders and visual problems.
Plaintiff was examined by Dr. Don W. Irby, a neurological surgeon in Monroe, on February 16, 1971. Dr. Irby found some muscle spasm and pain present in the cervical area. He was of the impression plaintiff could have a cervical disc syndrome although he felt a great deal of the current complaints were on a psychophysiological basis.
Dr. E. M. Krusen of the Baylor University Medical Center in Dallas examined plaintiff April 9, 1971, having seen him previously in 1968. The doctor found symptoms of a cervical sprain or cervical syndrome with headaches and dizziness and limitation of neck motion with muscle spasm. His report contains no prognosis.
*689 Plaintiff and his wife testified essentially he was doing fine for several months prior to the last accident, but experienced pain in his neck, lower back and leg almost constantly since the accident. Plaintiff also complained of dizziness, blurred vision, kidney disorder and other ailments, interfering with his regular activity.
The evidence supports the trial judge's conclusion that plaintiff suffered a cervical and lumbar strain and aggravation of a pre-existing condition in these areas of the neck and back, the results being more severe than ordinarily would be the case because of the pre-existing problems. The award of $5,000 for general damages appears to us to be in line and within the trial judge's much discretion.
The nature of the evidence relating to medical expenses makes it difficult to determine exactly which items relate to treatment for injuries received in the accident. We conclude plaintiff has established entitlement to the Hodge Clinic and Highland Clinic and Hospital bills and most, but not all, of the Oschner Hospital bill. Proof connecting some of the other expenses claimed with the injuries received in the accident is lacking. We, therefore, conclude that a total of $3,500 will adequately compensate plaintiff for medical expenses reasonably attributable to this accident, and the judgment should be amended accordingly.
Therefore, for the reasons assigned, the judgment of the district court is amended and recast as follows:
It is ordered, adjudged and decreed, that there be judgment in favor of plaintiff and against the defendants in solido for Five Thousand Three Hundred Fifteen and 66/100 ($5,315.66) Dollars, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed, that there be judgment in favor of intervenor, Southern Farm Bureau Casualty Insurance Company, and against the defendants in solido for Three Thousand One Hundred Eighty-Four and 34/100 ($3,184.34) Dollars, plus legal interest thereon from date of judicial demand until paid.
Amended, and as amended, affirmed.