HOOD, Judge.
This is a tort action instituted by Anna Mae LeDoux and her husband, Evans J. LeDoux, the latter suing individually and as administrator of the estate of his minor child, David LeDoux. Plaintiffs claim damages for personal injuries sustained by them when the automobile in which they were riding collided with a vehicle being driven by Jimmy C. Montgomery, a minor. The suit was instituted against W. M. Montgomery, the father of the driver of the last mentioned vehicle, and against American Guaranty and Liability Insurance Company, the insurer of the LeDoux vehicle in a policy which provides uninsured motorist coverage. Judgment was rendered by the trial court in favor of defendants, and plaintiffs have appealed.
The collision occurred on February 6, 1966, on East McNeese Street, in the City of Lake Charles, Louisiana. The street at that point is a hard surfaced, straight, two-way street which runs east and west. The weather was clear and the sun was shining brightly when the collision occurred.
Mr. LeDoux had been driving his Volkswagen automobile in an easterly direction on East McNeese Street, with Mrs. Le-Doux and their son David riding as passengers in the car with him. Their purpose was to go to the residence of Mrs. Eula Mae Babineaux which is located on the north side of that street. A private driveway leads from the north edge of East McNeese Street to the Babineaux residence. When LeDoux reached the point where East McNeese Street is intersected by the private driveway leading to that residence his car was struck from the rear by a car being driven by young Montgomery.
LeDoux testified that he slowed down and applied his brakes as he approached the driveway leading to the Babineaux home, that he turned on his directional signal light indicating that he intended to make a left turn, that his wife then warned him that an automobile was following closely behind him, and that upon receiving that warning he did not turn but remained in the eastbound lane of traffic. He stated that he was completely in his proper lane of traffic and was travelling east at a speed of about five miles per hour when his car was struck from the rear. His testimony as to how the accident occurred is supported by that of his wife.
Jimmy C. Montgomery testified that he was driving his father’s car at a speed of about 35 miles per hour when he first ob *564 served the LeDoux car about 100 yards ahead of him, that he noticed that the speed of that car was being reduced, that Montgomery also reduced the speed of the automobile he was driving until it shifted into the low passing gear, and that the LeDoux vehicle then came to a complete stop in the eastbound lane of traffic of the street. Montgomery stated that he then drove into his left lane of traffic to pass the LeDoux car, that while he was engaged in this passing maneuver and when he was within two car lengths of the other vehicle LeDoux suddenly started his car and turned to his left directly in the path of the overtaking vehicle. Montgomery testified that when the car ahead of him began its left turn maneuver he applied his brakes and turned to his right in an attempt to avoid a collision, but that the front of his car struck the left rear portion of the LeDoux automobile. He did not see the directional signal lights flashing on the LeDoux car at any time. Young Montgomery’s testimony as to the manner in which the accident occurred is supported by the testimony of one of his brothers who was riding in the car with him.
The city policeman who investigated the accident found no skid marks or debris on the street at the scene of the accident, after the collision occurred, the LeDoux car travelled or was knocked in a northeasterly direction, and after spinning around at least once it came to rest in a ditch running along the north side of the street. The Montgomery car continued to travel in an easterly direction on East McNeese street a distance of about one-fourth of a mile before it was brought to a stop. Young Montgomery testified that the accelerator of his automobile stuck as a result of the collision, and for that reason he was unable to bring his car to a stop within a shorter distance.
The testimony thus is in irreconcilable conflict as to how the accident occurred. Plaintiffs contend that LeDoux did not commence a left turn before the cars collided, that the LeDoux car was completely in its right lane of traffic facing east, and that the left turn signal lights on that car were flashing immediately before and at the time of the collision. Defendants, on the other hand, contend that LeDoux was engaged in making a left turn when the cars collided, that the LeDoux car was travelling in a northeasterly direction and was partially in both lanes of traffic, and that no turn signals of any kind were given by LeDoux before or at the time of the accident.
The trial judge accepted defendants’ version of the accident. He concluded that LeDoux was negligent in making a left turn in the path of the overtaking vehicle being driven by Montgomery, and that young Montgomery was free from negligence. Plaintiffs’ demands accordingly were rejected.
We think the evidence establishes that the Montgomery car was engaged in a passing maneuver just before the two vehicles collided. Mr. LeDoux testified that he looked in his rear view mirror immediately before the collision occurred and that he determined then that the Montgomery car was not behind him. He stated that “My wife said he was passing me; he was on the other lane at that time.” Mrs. LeDoux testified that immediately before the crash she told her husband, “Hon, don’t try to turn now, there’s a car passing us up and its coming fast.” These statements corroborate young Montgomery’s testimony that he was in the westbound lane of traffic and was engaged in the act of passing the LeDoux vehicle a moment before the cars collided.
The fact that the LeDoux car travelled or was knocked in a northeasterly direction and came to rest on the north side of the street after the collision indicates that LeDoux had commenced his left turn before the vehicles collided, as contended by defendants. The left front part of the Montgomery car struck the left rear fender and the left side of the rear bumper of the LeDoux vehicle. If the LeDoux car *565 had been facing or travelling east in its proper lane of traffic, as contended by plaintiffs, then it seems to us that a blow to the left rear corner of that car would have knocked it in an easterly or southeasterly direction. Under plaintiffs’ version of the accident, we cannot visualize how such a blow could have caused the LeDoux car to travel in a northeasterly direction and to come to rest on the north side of the street. If the LeDoux car, on the other hand, was engaged in making a left turn and was travelling in a northeasterly direction when it was struck, as contended by defendants, then it is logical to conclude that the blow would have caused it to continue to travel in that same direction and to come to rest on the north side of the street, as it did. The physical facts, therefore, indicate that defendants’ version of the accident is more reasonable and logical than that given by plaintiffs. See Hollins v. Jefferson Oil Co., 124 So.2d 629 (La.App. 3d Cir. 1960).
Plaintiffs contend that young Montgomery was driving at an excessive rate of speed as he approached and attempted to pass the LeDoux car. The trial judge stated in his reasons for judgment that “The Court does not believe there is any evidence to substantiate an excessive speed of the Montgomery vehicle at or prior to the impact.” In denying plaintiffs’ motion for a new trial, the trial judge again stated, “the Court does not believe that there was shown to be any excessive speed as a proximate cause of the accident,” and that “The Court believes it happened as stated, that the accelerator got stuck.”
Plaintiffs’ argument that the Montgomery car was speeding is based largely on the testimony of Mrs. LeDoux, the testimony of Mrs. Babineaux and the established fact that the Montgomery car travelled about one-fourth of a mile after the collision occurred before it was brought to a stop. As we have already noted, however, the trial judge accepted young Montgomery’s testimony as to the speed he was trav-elling and his explanation as to why he did not stop sooner, that explanation being that the accelerator on the car stuck immediately after the collision occurred.
The trial judge’s findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App. 3d Cir. 1966); Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 (La.App. 3d Cir. 1966).
In the instant suit the trial judge had the opportunity of observing the demeanor of the witnesses at the trial, and we cannot say that he erred in accepting the testimony of young Montgomery and his brother, rather than that of other witnesses as to the speed at which the Montgomery car was being driven.
Plaintiffs contend further that the trial judge erred in failing to find that the left turn signal light on the LeDoux car was flashing immediately before and at the time of the accident. They argue that such a turn signal was being given by LeDoux and that the driver of the Montgomery car was negligent in failing to observe it.
Mr. LeDoux testified positively that he gave the left turn signal, whereas Jimmy C. Montgomery and his brother stated that they did not see any such signal although they were looking at the LeDoux car. The trial judge concluded that “The evidence on this point is inconclusive.”
 We agree with the trial judge that the evidence tending to show that a left turn signal was given by LeDoux is inconclusive. The burden of proof rests on plaintiffs, however, to establish that such a signal was given, and since the evidence is inconclusive the trial judge correctly held that plaintiffs have failed to establish that fact.
Plaintiffs contend, finally, that young Montgomery was negligent in attempting *566 to pass the LeDoux car without blowing his horn or giving some other warning that he intended to pass after he saw that car stop in its lane of traffic. It is argued that the fact that LeDoux stopped in the travelled portion of the street should have constituted a warning to a following driver that he might make a left turn, and that Montgomery was negligent in proceeding to pass the LeDoux car without giving an adequate warning of his intention to do so. This is true particularly, it is argued, because the sun and the small size of the turn signals on the LeDoux car made it difficult for Montgomery to determine whether the signal lights actually were flashing.
The case of Goings v. State Farm Mutual Automobile Insurance Company, 158 So.2d 333 (La.App. 1st Cir. 1963, writ refused) involved facts similar to those involved here. Our brothers of the First Circuit Court of Appeal held that the mere fact that the lead car was travelling “very slowly” was not sufficient reason for the following motorist to anticipate that the driver intended to make a left turn into a private driveway, and that the following driver was not negligent in failing to sound his horn before beginning the passing maneuver. See also Clark v. Spillman, 173 So.2d 203 (La.App. 1st Cir. 1965).
In the instant suit the LeDoux car was not stopped at an intersection and there was no reason for young Montgomery to anticipate that LeDoux would make a left turn into a private driveway. Also, we think it was reasonable for the driver of the following car to assume that Le-Doux had observed him approaching from the rear and was waiting for him to pass. Plaintiffs, in fact, concede that Mrs. Le-Doux saw Montgomery approaching and warned her husband of that fact before the accident occurred. In any event, therefore, since plaintiffs were aware of the fact that Montgomery was approaching and that he intended to pass, the failure of the latter to give a horn signal was not a proximate cause of the accident.
A left turn is one of the most dangerous maneuvers a motorist can make. A motorist who attempts to make a left turn on a public street or highway, therefore, is charged with the duty of ascertaining in advance that the way is clear and that the turn can be made safely. Wesley v. Home Indemnity Co., 245 La. 133, 157 So.2d 467 (1963); McCann v. Mercer, 191 So.2d 150 (La.App. 3d Cir. 1966); Garris v. Jabbia, 179 So.2d 486 (La.App. 3d Cir. 1965).
We agree with the trial judge in the instant suit that the sole proximate cause of the accident was the negligence of Mr. LeDoux in attempting a left turn without first ascertaining that the way was clear and that such a maneuver could be made safely. We also agree with the holding of the trial court that young Montgomery was free from negligence.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.