LOTTINGER, Judge.
This is a suit filed by Gus Giluso, individually and as natural tutor of his minor son, Joseph Xavior Giluso, for personal injuries to the son and medical expenses to the father resulting from an accident between a motor bike driven by young Giluso and a truck owned by the Louisiana Department of Highways. Joined as defendant is the Department of Highways’ liability insurer, The Travelers Insurance Company. The Lower Court rendered a judgment in favor of defendants and against petitioners and dismissed the petitioners’ demand. Petitioners have taken this appeal.
The accident upon which this suit is based took place on September 10, 1966, in the vicinity of Hammond, in the Parish of Tangipahoa, State of Louisiana. Said accident involved a 1966 Yamaha motor bike driven by Joseph Xavior Giluso, the minor son of the petitioner, Gus Giluso, and a 1961 Dodge pick-up truck owned by the Department of Highways of the State of Louisiana, and driven at the time by Mr. Benjamin D. Harrison, an employee of the Department of Highways.
The accident took place at the “T” intersection of what is known as the Ward-line Road and a secondary gravel road. At the point of the accident, the Wardline Road, which was blacktopped, runs east and west, and the intersecting gravel road ran toward the north.
The petitioner alleges that young Giluso was riding his 1966 motor bike in an easterly direction on Wardline Road when the 1961 Dodge pick-up, owned by the State of Louisiana and driven by Mr. Harrison, was traveling in a southerly direction on the intersecting gravel road. Upon reaching the intersection the said pick-up truck proceeded to turn left into the Wardline Road immediately in front of young Giluso, thereby causing the motor bike to collide with the pick-up truck.
The defendants, on the other hand, contend that the pick-up truck had been proceeding in an easterly direction along the Wardline Road and was followed by young Giluso on his motor bike. The pick-up truck commenced to slow down as it reached the intersection preparatory to making a left-hand turn, at which time the motor bike collided with the rear end of the pickup truck. The only real question before the Court at this time is as to how the accident happened. The Lower Court held that the proximate cause of the accident was the negligence of young Giluso in run *194 ning into the rear end of the pick-np truck, and, therefore, rendered judgment in favor of defendants, dismissing petitioners’ demand. The petitioners have appealed.
The only party who corroborated the testimony of young Giluso to the effect that the pick-up truck was making a left turn from the gravel road into the Wardline Road directly in front of the' approaching motorcycle, was that of a twelve year old youngster named Ricky Rogers. Youn'g' Rogers testified that he was in the vicinity of the accident and that he was an eye witness to same. Nevertheless, although he was a cousin to the brother-in-law of young Giluso, he left the scene of the accident immediately after it occurred when he saw people coming out of the house, after hearing the impact.
The petitioner also introduced the testimony of Willie Owens, who lived approximately one-quarter of a mile up the gravel road from the scene of the accident, and who, prior to the accident, had been working in a garden in his yard alongside the road. He testified that some fifteen minutes prior to hearing a siren he noticed a Louisiana Department of Highways truck pass in front of his garden headed in a southerly direction along the gravel road. Some fifteen minutes later he heard the siren, apparently from the ambulance, and shortly thereafter someone passed in front of his house and told him that there had been an accident between the Department of Highways truck and a motorcycle. It was shown by the defendants that there was quite a bit of highway work in the area and that the roadways were rather heavily traversed by Highway Department trucks, thus seriously reducing the effect of the testimony oí this witness to the effect that this was the same truck which was in the accident.
The testimony of Mr. Alvin King was introduced on behalf of petitioner by way of deposition. Actually, the testimony of Mr. King tends to show that the accident occurred according to the version claimed by the defense.
Mr. King claimed that he lived approximately a block and a half from the intersection at which the accident happened. He stated that on that particular day his daughter-in-law came in and told him that there had been an accident at the end of the road. He got in his car and went down to the intersection and there were several people there already. It was raining at the time. Mr. King testified that the pickup truck was stopped on the east side of Randall Road approximately ten to twelve feet past the intersection. Upon being asked by the attorney for the petitioner if he could find any glass marks or anything like that in the road that would have indicate where the impact might have occurred, Mr. King responded: “Yes, there was a sign there, I would say that it occurred right at the end of the Randall Road on the West side.” He further testified that “ * * * the motor bike that morning showed skid marks. . He was coming from west going east on the Wardline Road. As far as the pick-up truck, I couldn’t say.”
The testimony of Benjamin D. Harrison, the driver of the truck, and his passenger, Gene Meyers, was similar. They both testified that prior to the accident they had been traveling in an easterly direction until they approached the intersection of the gravel road where the accident occurred. It is their testimony that this is the route they traveled approximately 90 percent of the time while working on this particular project and that when they traveled this route they would turn left on the gravel road which forms the intersection with Ward-line Road, where the accident took place.
On the day of the accident, as they approached this intersection and were preparing to make their left turn, they had slowed the truck accordingly. Prior to their actually beginning to negotiate the left turn, they realized that they had been struck in tthe rear when they heard the crash and felt the impact, and then saw that they had been struck in the rear by the motorcycle driven by Joseph Giluso. *195 They testified that after they brought the truck to a stop, they both got out and Mr. Harrison ran back to where the Giluso boy was lying and placed his handkerchief under his head and tried to assist him as much as he could. In the meantime, Meyers went into a neighboring house and called an ambulance.
Both of these witnesses testified that the truck was knocked forward to some extent by the impact and that it remained in the easternbound lane of traffic while proceeding to some point a little east of the eastern margin of the north-south gravel roadway forming the intersection. Both the motor bike and the Giluso boy were lying at a point north of the Wardline Road and west of the north-south gravel road. According to the testimony of these two witnesses, the point of impact took place slightly west of the point of intersection of the Wardline Road and the north-south gravel road. Mr. Harrison testified that shortly following the accident the Giluso boy asked him, “Why did you stop ?”
Lt. Adams, the State Police Officer who investigated the accident, testified that when he arrived at the scene of the accident the motor bike was lying to the north of the Wardline Road and approximately ten to fifteen feet west of the edge of the intersecting road. He testified that the physical evidence at the scene indicated that the impact took place approximately ten feet to the west of the intersection of the two roads, such physical evidence being comprised of broken glass and four feet of skid marks. He stated that the skid marks indicated that the motorcycle went sideways after striking the truck.
The question, therefore, before us is one as to the credibility of the witnesses. The cases in this State are legion to the point that except in a finding of a manifest error, the finding of fact on the part of the Trial Judge, especially where the credibility of the witnesses is involved shall not be overturned. Abercrombie v. Maryland Casualty Co., La.App., 212 So.2d 554 and LeDoux v. Montgomery, La.App., 212 So.2d 562. The witnesses were physically before the Trial Judge and his findings of fact based upon the testimony of the witnesses is entitled to a great deal of weight. We find no such manifest error on the part of the Lower Court.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.